35093. CASPER v. THE STATE.
35186. JONES v. THE STATE.
35226. GORDON v. THE STATE.

HILL, Justice.

Wallace Mobley was killed in his sporting goods store with a baseball bat on the evening of March 15, 1978. A jury was authorized to find the following facts: Laverne Jones, the manager of the victim's sporting goods store in Winder, Georgia, conspired with Barbara Casper and Linda Gordon to rob or "roll" the victim. To accomplish the robbery they enlisted the aid of Ray Johnson and James Tanner.

On the morning of March 15, 1978, as part of the robbery plan, Linda Gordon called the victim to confirm a "meeting" she and the victim were to have alone that evening in his store. About 10:30 a.m. Barbara Casper, Linda Gordon and James Tanner met Laverne Jones at the store where they discussed the plans for the robbery. These discussions were overheard by a friend of Laverne

Jones. The friend testified as a witness for the state. At approximately 3 p.m., Laverne Jones delivered a key to the front door of the store to Linda Gordon's trailer. At approximately 7:30 p.m. Barbara Casper drove James Tanner to the vicinity of the store, and Linda Gordon drove Ray Johnson to the store in his car. Ray Johnson joined Barbara Casper and James Tanner in Casper's car, and Linda Gordon then met the victim and entered the store. A few minutes later Linda Gordon and the victim left his store to go to a liquor store where the victim could purchase a bottle of liquor. Meanwhile, the two men used the key Laverne Jones had given to Linda Gordon and entered the store, where they hid near a soft drink machine. Linda Gordon and the victim returned to the store, and the victim went to the drink machine. James Tanner emerged from hiding and began hitting the victim repeatedly on the back of the head with an aluminum baseball bat. Although there was testimony to the effect that one of the men had a pistol, it was not used.

Linda Gordon and the two men then fled out the front door of the store, the two men fleeing on foot, and Gordon getting in Ray Johnson's car and driving away. Two young boys saw them run from the store and copied the tag number from the car. Police called Laverne Jones to the store to identify the body. She called the co-defendants to tell them the police were coming. The police apprehended Linda Gordon, James Tanner and Barbara Casper that evening outside the trailer where Linda Gordon and Ray Johnson lived. Three of them were in Barbara Casper's automobile, attempting to leave. Ray Johnson was also arrested at the trailer park. The key to the store and the victim's wallet were found in Barbara Casper's car. Part of the money taken in the robbery was recovered. Laverne Jones was arrested a week later. The victim died due to a crushed skull after failing to regain consciousness for almost three weeks.

James Tanner was tried by himself and found guilty. At the joint trial the other four defendants were convicted of the murder of Wallace Mobley. Defendants Linda Gordon and Ray Johnson were also convicted of the armed robbery of Mobley. The three women appeal their convictions in the joint trial.

1. All three defendants enumerate error in the trial court's admission into evidence of the other defendants' statements. Prior to the trial, Barbara Casper and Linda Gordon had signed written confessions. Laverne Jones had signed nothing, but had made incriminating statements which had been written down by the officer who had questioned her on several occasions after the murder.

Pursuant to an order of the trial court after a Jackson-Denno hearing, the statement of each defendant was edited to delete the names of the other defendants. It is true that although the statements were edited so as to delete the names of the other defendants, they nevertheless were interlocking; i.e., the factual statements were so closely related that when all the statements had been read, the jury could discern the identities of the participants. However, the trial court instructed the jury to consider each statement only in regard to its maker and not against another defendant. The denial of the right of cross examination, by admission of a conspirator's confession, recognized in Bruton v. United States, 391 U. S. 123, 133-134 (88 SC 1620, 20 LE2d 476) (1968), has not been repeated here. Parker v. Randolph, 47 USLW 4592 (1979). In Parker, as here, several defendants were jointly convicted of murder following a trial at which their redacted confessions were admitted for the jury's consideration as against the maker of each confession. The plurality in that decision held that no denial of confrontation occurs when the confessions of all defendants in the joint trial are admitted. If a distinction is to be drawn between a confession and an incriminating statement, then the admission of the confessions as against Laverne Jones who made only a statement, was harmless beyond a reasonable doubt in view of the testimony of her friend who overheard the conspirators planning the robbery and her own incriminating statement. Harrington v. California, 395 U. S. 250 (89 SC 1726, 23 LE2d 284) (1969).

We find no reversible error in the admission of the confessions or statements of the three defendants.

2. Defendants enumerate as error the failure of the trial court to grant their individual motions for separate

trials. We find no error. *Cain v. State,* 235 Ga. 128 (218 SE2d 856) (1975). Although they assert that in all likelihood, if their cases had been severed, one or more of their co-defendants would have testified as to exculpatory matters in their behalf, they have made no showing whatsoever in support of these bare assertions. Defendants overlook the fact that if a co-defendant had so testified, she would have been subject to cross examination as to her confession or incriminating statement.

3. Defendants enumerate error for several reasons in placing on the stand as a witness co-indictee James Tanner whose trial had been severed. They assert that the district attorney should have known that the co-indictee would refuse to testify and that he was called to the stand for the purpose of inflaming the jury.

Prior to swearing the co-indictee as a witness the court asked his attorney whether the witness had been advised of his rights. His attorney indicated that he had. The defendants objected because Tanner's name was not on the list of witnesses furnished them but this objection was overruled and it has not been appealed. See *Herring v. State,* 238 Ga. 288(2) (232 SE2d 826) (1977). The witness was sworn and the district attorney asked him several questions concerning his relationship to the crime and the defendants to which the witness responded each time, "Sir, with all due respect to the court, I have nothing to say." The trial court inquired as to why, and asked if the witness was "taking the fifth amendment." The witness answered that he did not know. The trial court then allowed the witness to leave the witness stand to confer with his attorney. Upon returning, the witness stated that he was invoking the fifth amendment. He was excused.

Defendants moved for a mistrial on the basis that the district attorney knew the witness would not testify, and called him only to inflame the jury. Upon inquiry the district attorney stated that he had no idea whether or not the witness would testify.

At a hearing on defendants' motions for a new trial, the state offered the testimony of an investigator for the sheriff's department, a patrolman for the city police

department, and an investigator for the district attorney's office, to the effect that the co-indictee had informed them that he would either testify or would wait to see his co-indictees' faces from the witness stand before he decided to testify. The defense offered an affidavit from the witness to the effect that he had told the investigators and police that he definitely would not testify. The trial court was authorized to determine that the district attorney was not on notice that the witness would not testify.

On appeal, defendants enumerate error on the following: That the court erred when it allowed the district attorney, without objection, to call the co-indictee to the stand as the district attorney should have known from law enforcement officers that the co-indictee would not testify; that the court erred in failing to examine the co-indictee as to his claim of privilege outside the presence of the jury; and that the court erred in failing to instruct the jury, after overruling the motion for mistrial or in its charge, that a co-indictee's reliance on the privilege against self-incrimination raises no unfavorable inferences against the defendants on trial.

There is a split of authority on the question of whether it is error for a prosecutor to call as a witness an accomplice, co-conspirator, co-defendant, or one associated with the defendant in criminal activity, for the purpose of having the witness claim the privilege against self-incrimination to influence the jury against the defendant. Anno. 86 ALR2d 1443, §§ 1-4.

The prior Georgia cases have involved the husband-wife privilege. *Merneigh v. State,* 123 Ga. App. 485 (2) (181 SE2d 498) (1971); *Colson v. State,* 138 Ga. App. 366 (13-17) (226 SE2d 154) (1976). The most recent of these held that it was error to call one spouse for the purpose of having him or her invoke the privilege not to testify against the marital partner. *Colson v. State,* supra. However, because the exercise of the marital privilege reflects directly upon the marital partner while the privilege against self-incrimination relates directly only to the witness, we consider these cases not to be precisely in point.

*Williams v. State,* 244 Ga. 485 (1979), involved a

situation somewhat similar to this case. There an alleged accomplice was called by the prosecutor, the defendant moved that the jury be excused, the motion was overruled, during the examination the witness said that he refused to testify so long as his attorney was not present and that he didn't want to be a snitch. The court held that the evidence failed to show that the prosecutor knew the witness would not testify, that there was no showing that the prosecutor was attempting to build a case based on the inference arising from the witness' use of the privilege, there was abundant independent evidence of the defendant's guilt, and there was no objection to the witness' remarks, no motion for mistrial and no demand for curative instructions.

In San Fratello v. United States, 340 F2d 560 (5th Cir. 1965), the Fifth Circuit in a federal criminal case noted that although the prosecutor has the right to call a witness and require the witness to invoke the privilege against self-incrimination, the prosecutor has no right to do so in the presence of the jury. There the court held that it was error to permit the prosecutor to call a witness, over objection, and to require the witness to invoke the privilege in the presence of the jury where the prosecutor knew in advance that the witness would invoke the privilege.

From the foregoing we find as follows: The court did not err in allowing the district attorney to put the co-indictee on the stand. See *Williams v. State* and San Fratello v. United States, supra. The trial court was authorized under the evidence to find that the district attorney did not have notice that the witness would invoke the privilege and hence the trial court did not err in failing to excuse the jury on its own motion so as to examine the co-indictee outside the presence of the jury. The trial court did not err in failing to give curative instructions upon overruling the motion for mistrial or in charge because no curative instructions were requested at either time. *Williams v. State,* supra. The trial court did instruct the jury twice that the guilt of any one defendant must be determined on the facts which show the part he or she had in commission of the crime, if any, and that the guilt of one person named in the indictment creates no

presumption of guilt of the others. We find no reversible error here.

4. Defendants Gordon and Casper enumerate error in the trial court's charge on malice murder and felony murder, asserting that the charge mixed the two offenses together and confused the jury into believing the two are the same offense. A reading of the charge shows clearly that the court merely instructed the jury that all four defendants were charged with murder and that only defendants Linda Gordon and Ray Johnson were charged with armed robbery. This explanatory charge was not confusing.

5. Defendant Casper enumerates error in the trial court's charge on circumstantial evidence. She asserts that it permitted a conviction upon the preponderance of the evidence. The charge here was not subject to the defect found in *Wells v. State,* 126 Ga. App. 130 (190 SE2d 106) (1972). We find no error.

6. Defendant Jones enumerates error in the denial of her motion for mistrial after the state allegedly placed her character in issue and error in the failure of the trial court to give corrective instructions to the jury. When the subject of "pot" was first mentioned by the officer testifying on direct examination as to Jones's incriminating statement, no motion for mistrial was made. On cross examination by Jones' counsel, a similar introductory question was asked and the officer amplified his answer. We find no reversible error.

7. Defendant Linda Gordon enumerates error in the verdict convicting her of armed robbery when that offense should have merged into the offense of felony murder, and in the trial court's failure to charge the jury accordingly.

Defendant Gordon was indicted for murder and armed robbery.[1] The trial court charged both malice murder and felony murder, and also armed robbery as to the affected defendants. As for Linda Gordon, the jury returned a general verdict of guilty of murder and armed robbery. The jury did not specify whether it found the defendant Gordon guilty of malice murder or felony

---

[1] All five participants were charged with murder.

murder.

Because of the failure of the jury to specify under what theory the defendant was found guilty of murder, the defendant must be given the benefit of the doubt; i.e., that she was found guilty of felony murder. Under the facts of this case, no separate sentence for armed robbery can be imposed on Linda Gordon. *Reed v. State,* 238 Ga. 457 (7) (233 SE2d 369) (1977); *Burke v. State,* 234 Ga. 512 (3) (216 SE2d 812) (1975); *Tarpkin v. State,* 236 Ga. 67 (5) (222 SE2d 364) (1976); *Stanley v. State,* 240 Ga. 341 (1) (241 SE2d 173) (1977); *Thomas v. State,* 240 Ga. 393, 404 (242 SE2d 1) (1977).

Linda Gordon has been sentenced to life in prison for murder; she has not been sentenced for armed robbery. Her conviction for murder is affirmed with direction that no sentence be imposed as to the armed robbery conviction.

*Judgment in Case Nos. 35093 and 35186 affirmed; judgment in Case No. 35226 affirmed with direction. All the Justices concur.*

35093, ARGUED JULY 10, 1979; 35186, ARGUED SEPTEMBER 11, 1979; 35226, ARGUED SEPTEMBER 17, 1979 — DECIDED NOVEMBER 7, 1979 — REHEARING DENIED NOVEMBER 21, 1979 IN CASE NO. 35186.

*Stan Durden, Hudson & Montgomery, Jim Hudson, Strickland & Chesnutt, W. Michael Strickland,* for appellants.

*Nat Hancock, District Attorney, Richard J. Burkett, Assistant District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Assistant Attorney General,* for appellee.

---

Linda Gordon and the two men were charged with armed robbery.