## 69933. HAWKINS v. THE STATE.
(333 SE2d 870)

POPE, Judge.

After a trial by jury, appellant was convicted of the armed robbery of the Bay Service Station in Brunswick, Georgia on November 12, 1982. On appeal two enumerations of error are assigned, both of which concern a State's witness, Charles A. Hawkins, appellant's brother and co-indictee.[1] Aside from the testimony adduced from Charles Hawkins, the State presented evidence to show the following: On the evening of November 12, 1982, Steven Pechin was working as an attendant at the Bay Service Station in Brunswick, Georgia. A light blue 1974 Ford Torino driven by Charles Hawkins ("Charles") ran out of gas in the station driveway. Pechin and Charles, the sole occupant, pushed it to the pumps for gasoline. Accompanied by others, Charles returned later in the evening in the same car for more gasoline. After they left, two men approached the station on foot. One was wearing a ski mask and carrying a sawed-off shotgun. Pechin was threatened with the weapon and forced to empty the cash register. Pechin identified the man with the shotgun as appellant. He and appellant had attended school together for four years and appellant had visited with Pechin at the station for thirty minutes or so on the previous evening. Pechin testified that the scars on appellant's nose were visible through the ski mask and that he recognized him from his distinctive voice and walk.

The light blue Torino was seen parked on a street behind the

---

[1] In both enumerations on appeal appellant seeks to assert violations of certain provisions of the Georgia Constitution as well as violations of the United States Constitution. We note that appellant's objections at trial did not include any reference to the Georgia Constitution. Where, as here, no assertion was made in the trial court that rights protected by the Georgia Constitution were endangered by the conduct of the trial, nothing is presented for us to review on state constitutional grounds, for it is well settled that grounds which may be considered on appeal are limited to those which were urged below, and this court will not consider questions raised for the first time on appeal. See *Payne v. State*, 171 Ga. App. 150 (1) (319 SE2d 826) (1984); *Stephens v. State*, 164 Ga. App. 398 (3) (297 SE2d 90) (1982). Furthermore, appellant's challenge based on state constitutional grounds is not argued on appeal beyond the broadly sweeping contention and thus is deemed abandoned under Court of Appeals Rule 15 (c) (2). We will accordingly confine our discussion of the issues on appeal to those grounds properly presented for review.

station near an alleyway leading from it. Two people were seen crouched and running from the alleyway to enter the car. Based upon the description of the car parked by the alleyway, Charles was stopped while driving the light blue Torino approximately twenty-five minutes after the robbery. He was alone and red shotgun shells like those used in the robbery were found in the car. Later that evening and after waiving his *Miranda* rights, Charles gave a statement concerning the robbery to law enforcement officers.

Testimony of one of the occupants of the car that evening, Jacoby Jackson, showed that he accompanied Charles, appellant, and two others to two places where a gun was picked up at each. One was a handgun, the other a sawed-off shotgun. The group drove past the Bay Service Station and dropped off appellant and Carlos Mangrum who told them to pick them up around the corner. The two had the guns when they left the car. Charles drove the Torino back to the service station, bought more gasoline, and then drove to the street behind the station, parking the car by the alleyway leading from it. Shortly thereafter, Jackson opened the back door, appellant and Mangrum jumped into the car and Charles drove away. They proceeded to a neighborhood where at least two of the occupants resided. Charles left all four of the passengers there, then drove away.

1. Appellant challenges the trial court's decision to permit Charles Hawkins to be called as a State's witness when the State had prior notice that he would invoke the Fifth Amendment privilege against self-incrimination. At the commencement of the trial and outside the presence of the jury, appellant's counsel moved to exclude Charles Hawkins as a witness for the State based upon the belief that, if called, he would invoke the Fifth Amendment. The State argued in response that the privilege was unavailable to him since he had previously been convicted for his part in the subject armed robbery. However, since his appeal from that conviction was pending, the State requested an order from the trial court pursuant to OCGA § 24-9-28 (a) granting Charles Hawkins immunity from the use of his testimony in any retrial which might result from his appeal. A ruling was deferred until Charles Hawkins was called by the State. At that time and again outside the presence of the jury, the trial court conferred on this question with the prosecuting attorney and appellant's counsel as well as Charles' attorney, Mr. Dismer. The trial court signed the order granting immunity to Charles and, upon the trial court's direction, Mr. Dismer instructed his client accordingly.

On direct examination in the jury's presence, Charles answered questions regarding his name and his relation to appellant. He stated that he did give a statement to police about the subject armed robbery at the Bay Service Station and that on the night of the crime he was driving the blue Torino automobile previously identified as the

"getaway car." He testified that on that evening he was accompanied by Donald Dickens, another co-indictee. However, when asked if later in the evening there were additional people in the car, Charles responded that he was "going to take the Fifth Amendment." The trial court suggested that Mr. Dismer sit with his client. Out of the hearing of the jury, appellant's counsel moved for a mistrial because the Fifth Amendment was invoked before the jury with the State's prior notice. Mr. Dismer explained that he had instructed his client on the grant of immunity and his obligation to answer the State's questions. In open court, the trial judge instructed Charles that the privilege against self-incrimination was no longer available to him due to the order of immunity. His failure to answer, he was told, constituted contempt of court punishable by incarceration. The State asked essentially the same question a few more times, with essentially the same refusal to answer. Each time, Charles was instructed on the unavailability of the Fifth Amendment privilege. However, when asked questions about remarks purportedly made by appellant and Mangrum when they jumped into the Torino at the alleyway, Charles replied that he did not hear any of that, and later replied, "No. That is not correct." He stated that he did not recall including that in his statement to police. When asked if he drove the back roads to Orange Park to drop off appellant and Mangrum, Charles testified that he drove to Orange Park and dropped off Donald Dickens. He further denied that he told police that he left appellant and Mangrum in Orange Park. Charles denied that Jackson was in the car. At the end of direct examination, appellant's counsel declined to cross-examine Charles, stating that he had no questions. The trial court removed the jury from the courtroom whereupon appellant's counsel renewed his motion for a mistrial, claiming that Charles' invocation of the privilege against self-incrimination had prejudiced appellant's right to a fair trial. The trial court denied appellant's motion and cited Charles with four counts of contempt of court.

Appellant relies upon the opinion in *Casper v. State*, 244 Ga. 689 (3) (261 SE2d 629) (1979), which explains: "There is a split of authority on the question of whether it is error for a prosecutor to call as a witness an accomplice, co-conspirator, co-defendant, or one associated with the defendant in criminal activity, for the purpose of having the witness claim the privilege against self-incrimination to influence the jury against the defendant. Anno. 86 ALR2d 1443, §§ 1-4." Id. at 693. Contrary to appellant's argument, however, we do not find that the State called Charles Hawkins for the purpose of having him assert such privilege before the jury. Nor do we find the State to have had the advance notice necessary to show such purpose in the case before us. See *San Fratello v. United States*, 340 F2d 560 (5th Cir. 1965). First, there has been no showing that the State had any inkling that

Charles would take the Fifth Amendment prior to the appellant's motion to exclude Charles' testimony at the beginning of the trial. Next and more important, the trial court's grant of an order of immunity pursuant to OCGA § 24-9-28 (a) removed from Charles any right to invoke the privilege against self-incrimination. See generally *Smith v. State*, 138 Ga. App. 683 (227 SE2d 84), affd. 237 Ga. 647 (229 SE2d 433) (1976). The record is clear that Charles was advised by his attorney upon the direction of the trial court regarding the meaning and import of the order granting him immunity for his testimony before he was called as a State's witness. Under these circumstances there was, thus, no reason for the State to know that Charles would defy the order of the trial court and improperly invoke the privilege against self-incrimination. It is also noteworthy that Charles did not seek to invoke the privilege except in response to those questions asked to determine whether appellant and Mangrum were occupants of the car during the evening of the armed robbery. In this case, "[t]here was neither 'a conscious and flagrant attempt' to build the prosecution's case out of inferences arising from the use of the testimonial privilege nor did the refusal to testify add 'critical weight' to the prosecution's case. [Cit.] Here there was abundant evidence independent of [Charles'] testimony establishing [appellant's] role in the [armed robbery]," including the victim's testimony identifying appellant as the perpetrator. *Williams v. State*, 244 Ga. 485, 489 (260 SE2d 879) (1979). We find no reversible error here.

2. Appellant's remaining enumeration of error asserts that he was denied his right to confrontation provided by the Sixth Amendment of the United States Constitution because the State was allowed to continue direct examination of Charles Hawkins regarding his statement to police even though he attempted to invoke the Fifth Amendment privilege. We find no such violation of appellant's rights.

As explained in Division 1, supra, the privilege against self-incrimination was unavailable to Charles. Further, at trial, although he admitted making the statement at issue, he denied parts of it and refused to answer other questions about it, specifically, whether appellant and Mangrum were in the Torino the night of the armed robbery. The trial court did not err in allowing testimonial evidence of Charles' previous statement to police. "The prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982)." *Griffin v. State*, 251 Ga. 431, 433 (306 SE2d 283) (1983).

Moreover, we find no violation of appellant's right to confrontation. The main and essential purpose of confrontation is to provide the opportunity for cross-examination. *Denson v. State*, 150 Ga. 618 (4) (104 SE 780) (1920). This purpose was fulfilled in this case.

Charles was on the witness stand and subject to cross-examination. However, appellant's counsel expressly declined the opportunity to question him. No attempt was made by counsel to ascertain whether or not Charles would, in fact, continue to attempt invocation of the Fifth Amendment privilege (cf. *Lingerfelt v. State*, 235 Ga. 139 (218 SE2d 752) (1975)), or whether Charles would offer testimony in explanation of his statement or in exculpation of appellant. See generally *Cates v. State*, 245 Ga. 30 (1) (262 SE2d 796) (1980). Appellant was not denied the right of confrontation, he simply did not exercise it. We find no error of any reason assigned.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED JULY 9, 1985 —
REHEARING DENIED JULY 31, 1985.

*Edward R. Zacker*, for appellant.
*Glenn Thomas, Jr.*, District Attorney, *E. Jerrell Ramsey*, Assistant District Attorney, for appellee.