### A00A0206. WILLARD et al. v. THE STATE.
(535 SE2d 820)

SMITH, Judge.

Bradford Curry Willard (hereinafter "Willard"), his mother, Elizabeth Willard, Matthew Jones, and Tracy Clark were indicted by a Meriwether County grand jury on one count of arson in the first degree, OCGA § 16-7-60, and one count of conspiracy to commit arson, OCGA § 16-4-8. Willard pleaded guilty before trial; a jury convicted Elizabeth Willard and Clark on both counts and convicted Jones of conspiracy. Appellants Elizabeth Willard, Jones, and Clark appeal from the judgment of conviction on the jury's verdict.

1. In their first enumeration of error, appellants contend the trial court improperly permitted the State to place Willard on the stand after he asserted his Fifth Amendment right against self-incrimination. We disagree.

On the opening day of trial, counsel for appellants made a motion in limine to bar the State from calling Willard as a witness on the basis that he intended to invoke his Fifth Amendment right against self-incrimination if called to testify. The trial court initially denied the motion but allowed appellants to file a motion and brief. After further argument, the State offered to grant immunity to Willard.

The following day, appellants expanded their motion in limine to include not only the testimony of Willard but also any mention of his plea or any statement made by him. After further argument, the trial court denied the general motion but indicated it would rule on such evidentiary matters as they arose.

Before the State placed Willard on the stand, the prosecutor offered an application for a grant of immunity under OCGA § 24-9-28 (a). Willard's attorney appeared and objected to the testimony on the ground that Willard might be prosecuted for perjury on the stand, because it is exempted from the scope of OCGA § 24-9-28. According to his counsel, Willard feared that he would be charged with perjury if his testimony at trial differed from his earlier statements under oath. In response, the prosecutor stated on the record:

> [W]e're not going to prosecute him for any perjury he may have committed either in the preliminary hearing or in his guilty plea yesterday. And the State will forego, that is, we will not prosecute him for any perjury he may have commit-

ted for those acts. But our understanding is still that he is protected from any prosecution for his statements he should make on the stand unless he were to commit perjury today.

Counsel for Willard also expressed his client's concerns "because of the aura attached to being a snitch or an informant that goes along with the penal system" and because the house was insured by an out-of-state insurance company, interstate commerce was involved, and Willard might be subject to federal prosecution.

The trial court immediately conducted a hearing outside the presence of the jury as required by *Parrott v. State*, 206 Ga. App. 829, 832 (2) (427 SE2d 276) (1992), and Willard expressed his intention to refuse to testify. After hearing his testimony, the trial court granted immunity to Willard but cautioned the State that if Willard nevertheless refused to testify, "the court would not allow any cross-examination of the witness and the witness would be dismissed from the witness stand because the defendant would not have . . . an effective cross-examination." The trial court concluded that it would "grant this witness immunity and order him to testify in this case."

The jury was called in, and as soon as Willard was asked to raise his right hand, he interjected, "I'm gonna refuse to testify." The trial court then asked him if he understood that he was being asked to testify, that he could possibly be prosecuted for his failure to testify, and that the court had signed a grant of immunity for his testimony. Willard responded, "I'm still not gonna testify today." The trial court asked the prosecutor if he had anything further, and the prosecutor asked, "Mr. Willard, have you pled guilty?" At this point, before Willard responded in any fashion, counsel for appellants interposed an objection and moved for a mistrial. Both were overruled, the trial court asked Willard if he was refusing to testify even though he had been ordered to do so by the court and, upon receiving an affirmative response, cited Willard for contempt and allowed him to leave the stand.

Appellants assert that the trial court erred in forcing Willard to take the stand and invoke his Fifth Amendment rights before the jury. Appellants' argument, although asserted in a single enumeration of error, actually encompasses two separate contentions: first, that Willard properly asserted his Fifth Amendment rights; and second, that appellants were deprived of their Sixth Amendment right to an effective cross-examination.[1] Neither contention is correct.

(a) First, we note that "[t]he trial court's grant of an order of immunity pursuant to OCGA § 24-9-28 (a) removed . . . any right to

---

[1] We nevertheless address both issues, as the Supreme Court of Georgia has directed in *Felix v. State*, 271 Ga. 534, 539-540 (523 SE2d 1) (1999).

invoke the privilege against self-incrimination. [Cit.]" *Hawkins v. State*, 175 Ga. App. 606, 609 (1) (333 SE2d 870) (1985). As in *Hawkins*, no showing has been made that the State knew of Willard's intention to assert the Fifth Amendment prior to the motion to exclude Willard's testimony at the beginning of the trial. Id. at 608-609. In fact, Willard was still in the process of pleading guilty in another courtroom as appellants' trial began.

Appellants' contention that Willard was entitled to plead the Fifth Amendment because the statutory immunity does not protect him against prosecution for perjury during his trial testimony is without merit. OCGA § 24-9-28 (a) itself plainly provides that the witness "may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing, or contempt committed in testifying or failing to testify." Under *Hawkins*, the grant of an order of immunity under this Code section removes "any right to invoke the privilege." Id. at 609. As the State observed at trial, to hold otherwise would render the immunity statute meaningless, because any witness would be able to continue to assert the privilege against self-incrimination regardless of a grant of immunity.

Citing no authority, appellants argue that Willard still had a valid basis to invoke his Fifth Amendment rights because a federal prosecution might theoretically occur. We agree with the trial court that this was at best "a remote possibility." Appellants have "the burden of showing error affirmatively by the record, and this burden cannot be discharged by recitations of error in the brief. [Cits.]" (Punctuation omitted.) *Guest v. State*, 229 Ga. App. 627, 628 (1) (494 SE2d 523) (1997). On the facts in this record, appellants have not shown what Willard's testimony at trial would have been, nor have they demonstrated the likelihood or even the possibility of a federal prosecution on the basis of Willard's testimony at trial. Appellants' argument that Willard remained in danger of prosecution because the conspiracy count against him was nol prossed is also without merit. OCGA § 16-4-8.1 expressly provides that a person "may not be convicted of both conspiracy to commit a crime and the completed crime."

(b) Appellants contend that they were deprived of their right of effective cross-examination of Willard and that the State created an "unfavorable inference" through Willard's appearance on the witness stand. Appellants rely on *Parrott*, supra, *Lawrence v. State*, 257 Ga. 423 (360 SE2d 716) (1987), and *Lingerfelt v. State*, 235 Ga. 139 (218 SE2d 752) (1975), although none of these decisions involves a grant of immunity under OCGA § 24-9-28 (a). We note, although appellants do not, that the decision of *Greenwood v. State*, 203 Ga. App. 901 (418 SE2d 160) (1992), applied the rationale of *Lingerfelt* and its progeny to a case in which a witness refused to testify despite a grant of

immunity. But the rationale relied on by appellants is not applicable to the facts of this case.

Here, as in *Parrott*, supra, the procedural scheme established by the Supreme Court in *Lingerfelt* was followed by the State. In *Lingerfelt*, after the witness invoked the Fifth Amendment, the State read into evidence by means of leading questions the previous testimony of the witness in another proceeding, thereby depriving Lingerfelt of the right to cross-examine the witness. The error in that case was compounded by the fact, noted by the Supreme Court, that an earlier appeal had already held the previous testimony inadmissible, and the leading questions were a device "to do indirectly what we had held could not be done directly." Id. at 140. Similarly, in *Greenwood*, supra, the recalcitrant witness refused to answer when the State propounded, over objection, a series of questions asking in detail about his and Greenwood's participation in the crime with which they were charged.

> Indeed, a witness' in-court invocation of his Fifth Amendment rights is not necessarily harmful. What is harmful is for the trial court to allow the State, once a witness has invoked his Fifth Amendment rights, in effect, to testify for the witness and circumvent meaningful cross-examination as to obvious inferences.

(Citations and punctuation omitted.) *McIntyre v. State*, 266 Ga. 7, 11 (5) (463 SE2d 476) (1995).

In this case, the State asked only one general question which did not contain any facts regarding appellants or the charges against them, and no testimony previously ruled inadmissible was placed before the jury. In accordance with its earlier order that no such testimony would be placed on the record and the witness would immediately be excused, the trial court ended the examination and excused Willard. Moreover, Willard never responded in any fashion to the single question, and "an unanswered question does not furnish grounds for a mistrial. [Cits.]" *Berry v. State*, 210 Ga. App. 789, 791 (4) (437 SE2d 630) (1993). Appellants were not deprived of their right to an effective cross-examination, because the witness never answered or refused to answer the single question directed to him by the State.

"The trial court has a wide latitude of discretion in controlling the examination of witnesses, and unless there is a manifest abuse of this discretion, an objection such as here will not work a reversal of the case." (Citations and punctuation omitted.) *Smith v. State*, 236 Ga. App. 122, 124 (3) (511 SE2d 223) (1999). We cannot say that, under these circumstances, the trial court erred in allowing Willard to take the stand.

2. The State concedes that the hearing required by OCGA § 17-14-8 before imposition of restitution was not held. Accordingly, this portion of each of the trial court's judgments is reversed, and this case is remanded for hearing on the issue of restitution.

*Judgments affirmed in part and reversed and remanded in part. Pope, P. J., and Miller, J., concur.*

DECIDED JUNE 13, 2000.

*John T. Martin, Frank K. Martin*, for appellants.
*Peter J. Skandalakis, District Attorney, Jeffery W. Hunt, Assistant District Attorney*, for appellee.