S08A0475. HENDRICKS v. THE STATE.
(660 SE2d 365)

CARLEY, Justice.

Reginald Hendricks was brought to trial before a jury on several charges, including malice murder. The State's theory was that he, along with others, participated in a drug deal that ended in the shooting death of Andres Gomez Meza, who was the suspected dealer. The jury found him guilty but, on appeal, his convictions and sentences were reversed. *Hendricks v. State*, 277 Ga. 61 (586 SE2d 317) (2003). Hendricks was retried, and the jury found him guilty of felony

murder while participating in a conspiracy to violate the Controlled Substances Act by trafficking in cocaine, the underlying conspiracy to traffic in cocaine, voluntary manslaughter, and possession of a firearm during commission of a felony. The trial court sentenced him to life imprisonment on the felony murder count, and to a consecutive five-year probated term for the weapons offense. See *Smith v. State*, 272 Ga. 874, 880-881 (6) (b), (c) (536 SE2d 514) (2000) (where there is single homicide victim and predicate felony is independent of killing, verdicts of guilty of felony murder and voluntary manslaughter not mutually exclusive, but only conviction and sentence for felony murder is authorized). Hendricks appeals from the judgments of conviction and sentences imposed after the retrial.[*]

1. When construed most strongly in support of the jury's verdicts, the evidence is sufficient to authorize a rational trier of fact to find proof of Hendricks' guilt beyond a reasonable doubt of felony murder and of possessing a firearm during commission of that offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hendricks v. State*, supra at 61 (1).

2. Hendricks urges that the trial court erred in denying a motion to suppress his post-arrest statement, in which he admitted that he was in the backseat of the victim's car when the fatal shooting occurred. He contends that the statement is inadmissible due to his mental incompetency at the time that he made it.

"A person who is mentally ill can be competent to make a voluntary confession. [Cit.]" *Johnson v. State*, 256 Ga. 259, 260 (4) (347 SE2d 584) (1986). However, "[a] confession made by one who is insane is not the product of 'a rational intellect and a free will,' and is, thus, not voluntarily made. [Cits.]" *State v. Gardner*, 254 Ga. 264, 265 (328 SE2d 546) (1985). A review of the transcript of the hearing conducted on Hendricks' motion shows that the evidence did not demand a finding that he was insane at the time he made the statement.

In fact, the evidence would not even support a finding that he suffered from any mental deficiency at that time. Hendricks' own expert conceded that she had no opinion as to his mental state when he was placed under arrest. However, she did testify that, based on her review of Hendricks' testimony at the original trial, he was not

---

[*] The crimes were committed on September 21, 1999. The grand jury returned the indictment on January 19, 2000. The verdicts at the retrial were returned on October 4, 2005 and, on that same day, the trial court entered the original judgments of conviction and sentences. Hendricks filed a motion for new trial on October 14, 2005. On July 24, 2007, the trial court denied the motion and entered a nunc pro tunc order amending the judgments of conviction and sentences to comport with the guilty verdicts returned by the jury. Hendricks filed a notice of appeal on August 6, 2007, and the case was docketed in this Court on November 21, 2007. The appeal was submitted for decision on January 14, 2008.

exhibiting then the symptoms of the mental disorder that she subsequently observed in him. In her opinion, the possible explanation was that the intervening conviction and imposition of a life sentence for murder may have been the "unfortunate or catastrophic life event to begin the cycle of the illness."

If the decline in Hendricks' mental facilities did not even begin to manifest itself until after his original conviction and imprisonment, then it certainly could not have been a determinative factor in the voluntariness of his much earlier post-arrest statement to the authorities. The evidence, including the testimony of Hendricks' own expert witness, was sufficient to authorize the trial court to conclude that, at the time he spoke with the police, he was mentally competent and offered his statement freely and voluntarily. See *Choi v. State*, 269 Ga. 376, 377 (2) (497 SE2d 563) (1998). See also *Johnson v. State*, supra.

3. Carlton Tyson was a co-indictee who, unlike Hendricks, pled guilty to certain of the charges arising out of the fatal drug transaction. When the State indicated that it intended to call Tyson as a witness, the trial court questioned him outside the presence of the jury and established that he would not testify against Hendricks even though the prosecutor made an oral offer of immunity. After holding Tyson in contempt, the trial court recalled the jurors and informed them that Tyson had pled guilty to various offenses, that he refused to cooperate with the State despite an offer of immunity, and that he had been held in contempt for that refusal. Hendricks asserts that the trial court erred by informing the jury that Tyson refused to testify and had been cited for contempt for doing so.

> This Court has found an abridgment of the right of confrontation under the Sixth Amendment where the State, in the jury's presence, posed a series of leading questions suggesting the guilt of the accused to a co-indictee witness who refused to answer on Fifth Amendment grounds. [Cits.]

*Horne v. State*, 281 Ga. 799, 807 (5) (642 SE2d 659) (2007). However, that is not what occurred here. Tyson never appeared before the jury and, consequently, was not required to exercise his right to remain silent repeatedly as the prosecutor posed a line of questions suggestive of Hendricks' guilt. Instead, the trial court merely informed the jury that Tyson, whose name appeared on the indictment along with Hendricks', had refused to testify notwithstanding the proffer of immunity and had, therefore, been held in contempt.

The State does not offer any reason why Tyson's refusal to testify was relevant and, therefore, an appropriate topic for the jury's consideration in this case. See *Dodd v. State*, 236 Ga. 572, 574-576

(224 SE2d 408) (1976). Nevertheless, had Tyson simply exercised his right to remain silent in the jury's presence, without more, there would be no harmful error.

> [A] witness' in-court invocation of his Fifth Amendment rights is not necessarily harmful. [Cits.] What is harmful is for the trial court to allow the State, once a witness has invoked his Fifth Amendment rights, "in effect, to testify for the witness and circumvent meaningful cross-examination as to obvious inferences . . . ." [Cit.] If a witness' mere in-court assertion of his Fifth Amendment rights is not necessarily harmful, then a passing reference to [his] mere out-of-court assertion of [his] rights, although irrelevant, is not prejudicial.

*McIntyre v. State*, 266 Ga. 7, 11 (5) (463 SE2d 476) (1995). The trial court's comment regarding Tyson's out-of-court refusal to testify, though seemingly irrelevant, would not appear to be any more prejudicial than if that refusal had occurred in the jury's presence. The trial court did not violate OCGA § 17-8-57 by expressing an opinion as to what had been proven in the case. The reference was to an undisputed factual event involving a prospective witness which, had it actually taken place before the jurors themselves, would not have been harmful to the defense. See generally *Brock v. State*, 270 Ga. App. 250, 253 (6) (605 SE2d 907) (2004); *Norris v. State*, 240 Ga. App. 231 (523 SE2d 80) (1999).

Despite the apparent irrelevancy of the topic of Tyson's refusal to testify, Hendricks must show harm, as well as error, to demonstrate his entitlement to a new trial. Hendricks urges that the prejudice stems from the fact that, not only did the trial court inform the jurors of Tyson's refusal to testify, it also told them that he had been held in contempt for that refusal. However, Tyson was an ostensible witness for the State. Compare *Roberts v. State*, 208 Ga. App. 628, 629 (1) (431 SE2d 434) (1993). Therefore, the jury's knowledge that he had been held in contempt for failing to testify was unlikely to give rise to any prejudicial inferences against Hendricks. To the contrary, the fact that Tyson, having already acknowledged his own guilt for the crimes, nevertheless refused to testify for the prosecution despite the grant of immunity was more nearly subject to being interpreted favorably for the defense. His refusal to testify for the State, even though he had nothing to lose by doing so, would seem to indicate that he did not have any testimony to give which was inculpatory of Hendricks.

Hendricks also contends that Tyson was justified in refusing to testify because the offer of immunity was not made in writing. That may be a valid defense which Tyson could raise to his own citation for

contempt. See *In re Long*, 276 Ga. App. 306 (623 SE2d 181) (2005). However, the fact that the offer of immunity was not made in writing has no bearing on whether the trial court's comment informing the jury that Tyson had been cited for contempt was prejudicial to Hendricks. See *Bryan v. State*, 168 Ga. App. 711, 712 (3) (310 SE2d 533) (1983). Here, as in *McIntyre v. State*, supra, the challenged remark, though lacking any demonstrable relevancy, "does not require reversal." See also *Willard v. State*, 244 Ga. App. 469, 471 (1) (b) (535 SE2d 820) (2000).

*Judgments affirmed. All the Justices concur.*

DECIDED APRIL 21, 2008.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary N. Kimmey, Assistant Attorney General*, for appellee.