A08A1042. SILLAH v. THE STATE.
(663 SE2d 274)

BLACKBURN, Presiding Judge.

Following a jury trial, Marcus Sillah appeals his conviction for armed robbery,[1] aggravated assault,[2] and obstructing an officer (misdemeanor).[3] He argues that the trial court erred in (i) allowing a co-indictee (who had already pled guilty) to take the stand in the presence of the jury, even though the co-indictee had announced that he would not testify, (ii) admitting the co-indictee's guilty plea without giving limiting instructions, and (iii) finding Sillah did not carry his burden of showing ineffective assistance of counsel. Discerning no error, we affirm.

Construed in favor of the verdict, *Short v. State*,[4] the evidence shows that Sillah and another male approached a car (containing a couple) that had just parked in a residential apartment parking lot. The other male arrived first and, pulling out a handgun, opened the front passenger door and pointed the gun at the female passenger. While the couple was focused on the gunman, Sillah arrived at the driver door and opened it, demanding money from the couple. When Sillah continued to repeat his demand for money, the male driver removed his wallet and produced $11, whereupon the driver exclaimed that he saw a police car coming around the corner of the parking lot. Sillah saw the police car and ran, whereas the gunman reached in and grabbed the $11 before escaping.

The couple exited their vehicle and flagged down the officer, who immediately called for backup and began a search for Sillah and the gunman. When found, Sillah ran despite commands from police to

---

[1] OCGA § 16-8-41 (a).
[2] OCGA § 16-5-21 (a) (2).
[3] OCGA § 16-10-24 (a).
[4] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

stop; police eventually overtook and arrested him. The gunman was also apprehended nearby, and the male victim identified both men at the scene.

Both men were indicted for armed robbery and aggravated assault, with an additional charge against Sillah of obstructing an officer. The gunman pled guilty to the two charges against him, and a jury found Sillah guilty of the three charges against him. The court denied Sillah's motion for new trial, giving rise to this appeal.

1. Citing *Horne v. State*[5] and *Lawrence v. State*,[6] Sillah first contends that the trial court erred in permitting the State to call the gunman to the stand in front of the jury, even though the gunman (who had earlier pled guilty) had announced to the parties' counsel that he would not testify. Sillah asserts that the gunman's appearance on the stand coupled with his silence created an unfavorable inference of guilt against Sillah. We hold that under the circumstances of this case, where the gunman simply refused to be sworn and was not questioned, the trial court did not abuse its discretion.

"The trial court has a wide latitude of discretion in controlling the examination of witnesses, and unless there is a manifest abuse of this discretion, an objection such as here will not work a reversal of the case." (Punctuation omitted.) *Willard v. State*.[7] In *Willard*, the defendant similarly contended that an unfavorable inference was created when a co-indictee who had pled guilty was called to the stand in front of the jury even though he had announced his intention to the court to not testify. Id. at 469-470 (1). With the jury present, the co-indictee refused to be sworn and simply announced that he would not testify. The prosecution then asked the co-indictee a single question ("have you pled guilty?"), which the co-indictee did not answer when defense counsel objected. Id. at 470 (1). After confirming with the co-indictee that he would not testify even though he was faced with contempt, the court held the co-indictee in contempt and dismissed him from the stand. Id.

Finding no unfavorable inferences arose, *Willard* held that a co-indictee's refusal to testify is not necessarily harmful to the defendant. Id. at 472 (1) (b). Rather, "[w]hat is harmful is for the trial court to allow the State, once a witness has invoked his Fifth Amendment rights, in effect, to testify for the witness and circumvent meaningful cross-examination as to obvious inferences." (Punctuation omitted.) Id. *Willard* distinguished *Lawrence*, supra, 257 Ga. at 424-425 (3), in which the State went on to ask the silent witness

---

[5] *Horne v. State*, 281 Ga. 799, 804-809 (5) (642 SE2d 659) (2007).

[6] *Lawrence v. State*, 257 Ga. 423, 424-425 (3) (360 SE2d 716) (1987).

[7] *Willard v. State*, 244 Ga. App. 469, 472 (1) (b) (535 SE2d 820) (2000).

14 leading questions, which suggested the guilt of the defendant. See also *Horne*, supra, 281 Ga. at 804-809 (5) (court erred in allowing the State to pose to the silent witness 117 leading questions that tended to incriminate the defendant). *Willard* concluded:

> In this case, the State asked only one general question which did not contain any facts regarding appellants or the charges against them, and no testimony previously ruled inadmissible was placed before the jury. In accordance with its earlier order that no such testimony would be placed on the record and the witness would immediately be excused, the trial court ended the examination and excused [the co-indictee]. Moreover, [the co-indictee] never responded in any fashion to the single question, and an unanswered question does not furnish grounds for a mistrial. Appellants were not deprived of their right to an effective cross-examination, because the witness never answered or re-fused to answer the single question directed to him by the State.

(Citation and punctuation omitted.) Id. at 472 (1) (b).

This year, the Supreme Court of Georgia in *Hendricks v. State*[8] reaffirmed the lack of prejudice in allowing the jury to know that a witness has refused to testify and has been held in contempt as a result. Noting that the silent witness was ostensibly a witness for the State, *Hendricks* reasoned:

> Therefore, the jury's knowledge that he had been held in contempt for failing to testify was unlikely to give rise to any prejudicial inferences against [the defendant]. To the contrary, the fact that [the co-indictee], having already acknowledged his own guilt for the crimes, nevertheless refused to testify for the prosecution despite the grant of immunity was more nearly subject to being interpreted favorably for the defense. His refusal to testify for the State, even though he had nothing to lose by doing so, would seem to indicate that he did not have any testimony to give which was inculpatory of [the defendant].

Id. at 473 (3).

Here, the gunman, who had informed the parties' attorneys that he would not testify, was called to the stand in the presence of the

---

[8] *Hendricks v. State*, 283 Ga. 470, 473 (3) (660 SE2d 365) (2008).

jury (over Sillah's objection) and refused to be sworn, simply informing the court that he would not testify. Outside the presence of the jury, the court informed the gunman that having pled guilty, he had no constitutional right to not testify and that he would be held in contempt if he refused to testify. When the gunman nevertheless refused to testify, the court held him in contempt and dismissed him from the stand. After the jury returned, the court informed them that the witness refused to testify and had been held in contempt as a result. Similar to *Willard* and *Hendricks*, we can discern no prejudice to Sillah nor any abuse of discretion by the trial court.

2. Sillah next complains that the trial court erred in allowing the State to introduce the gunman's conviction (arising from his guilty plea) without giving the jury any instruction that prohibited them from considering that conviction in determining Sillah's guilt. Although a guilty plea of a joint offender is not generally admissible in evidence at the trial of another joint offender, *Pinckney v. State*,[9] Sillah did not object to the introduction of this conviction; indeed, Sillah's counsel intended to introduce this conviction himself if the State did not, as the entire thrust of Sillah's defense was that the gunman (not he) committed the robbery and that he was merely present. The conviction also showed the jury that Sillah was facing a lengthy prison sentence if the jury found him guilty, which Sillah's counsel thought would work to Sillah's advantage. Sillah's counsel consciously avoided asking for an instruction informing the jury that this guilty plea bore no relation to Sillah's guilt, as counsel felt that telling the jury such might well plant the idea of a correlation in the jury's mind.

Under nearly identical circumstances, *Buchanan v. State*[10] held there was no error in introducing the guilty plea of a joint offender without a limiting instruction. "A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. Induced error is impermissible and furnishes no ground for reversal." (Punctuation omitted.) Id. Moreover, "[h]aving failed to request a limiting instruction, defendant cannot assert that the trial court erred because it did not give such an instruction." (Punctuation omitted.) *Cotton v. State*.[11]

3. Sillah claims in his third enumeration of error that the trial court erred in denying his motion for new trial when it found that he did not carry his burden of showing ineffective assistance. Specifically, Sillah alleges that his trial counsel acted deficiently when

---

[9] *Pinckney v. State*, 236 Ga. App. 74 (1) (510 SE2d 923) (1999).
[10] *Buchanan v. State*, 254 Ga. App. 249, 251 (2) (562 SE2d 216) (2002).
[11] *Cotton v. State*, 279 Ga. 358, 359 (2) (613 SE2d 628) (2005).

counsel failed to object to the introduction into evidence of the guilty plea of the gunman and further failed to request a limiting instruction thereon. As some evidence supported the trial court's findings that these decisions were strategic and not patently unreasonable, we discern no error.

> To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficiency so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. The trial court's findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous.

(Citations omitted.) *Domingues v. State*.[12]

Moreover, "[a]s a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. A reviewing court evaluates trial counsel's performance from counsel's perspective at the time of trial." (Punctuation omitted.) *Robinson v. State*.[13] See *Abernathy v. State*[14] ("[t]rial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them") (punctuation omitted).

Here, the consistent strategy of Sillah's counsel throughout the trial (as reflected in his opening statement, cross-examination of witnesses, direct examination of Sillah, and closing argument) was that the gunman committed the robbery and assault and that Sillah was merely present and made no demands on the victims but was only trying to convince the gunman (when Sillah opened the car door) to flee and to not commit the robbery. Counsel confirmed this strategy with Sillah. Trial counsel testified at the motion for new trial hearing that the guilty plea of the gunman was important to the defense strategy of placing all the blame on the gunman (as well as showing the jury that Sillah would serve a lengthy sentence if they found him guilty). He further testified that for tactical reasons, he consciously did not ask for a limiting instruction that told the jury

---

[12] *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).
[13] *Robinson v. State*, 278 Ga. 31, 37 (3) (d) (597 SE2d 386) (2004).
[14] *Abernathy v. State*, 278 Ga. App. 574, 587 (3) (b) (v) (630 SE2d 421) (2006).

not to consider the guilty plea in determining Sillah's case, as counsel felt that such an instruction would have planted a seed in the jury's mind that there might be a correlation between the guilty plea and Sillah's guilt or innocence. See *Buchanan*, supra, 254 Ga. App. at 251 (2). Such strategic decisions by counsel were not patently unreasonable and supported the trial court's finding that Sillah did not carry his burden of showing ineffective assistance of counsel. See *Johnson v. State*.[15]

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JUNE 5, 2008.

*Carnesale, Delan & Flinn, Charles C. Flinn*, for appellant.
*Daniel J. Porter, District Attorney, Latysha M. Saunders, Assistant District Attorney*, for appellee.

---

[15] *Johnson v. State*, 279 Ga. App. 182, 185 (3) (c) (630 SE2d 778) (2006).