**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**May 29, 2013**

# In the Court of Appeals of Georgia

A13A0036. TANKSLEY v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Jordash Antwan Tanksley was convicted of burglary, armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. Tanksley contends on appeal that the trial court improperly instructed a State's witness to repeat his previous testimony or be charged with perjury and that the trial court erred in charging the jury. For the reasons set forth below, we disagree. Tanksley also claims that he was improperly punished as a recidivist in the absence of evidence of his prior convictions. We agree. Accordingly, we affirm the judgment of conviction, but we vacate Tanksley's sentence and remand the case with instruction that he be resentenced.

Viewed in a light most favorable to the jury's verdict, the evidence shows that during the early morning hours of July 30, 2007, Tanksley and his father, Clarence Tanksley, along with Derrell McNair and Megan McClendon, drove to a clothing store. Clarence Tanksley broke the store's window. Clarence Tanksley and McNair then entered the store through the broken window. The store owner and his girlfriend were asleep in the store's office at the time, and they were awakened by the sound. The owner yelled loudly so that the intruders would know that someone was in the store. After hearing several gun shots, the owner returned fire by shooting through the office wall. McNair was struck by a bullet. Tanksley, who was in the driver's seat of the car parked outside the store, fired two or three shots. The intruders left after taking some clothing, a television, and a computer.

Police apprehended Tanksley that same day. He was indicted for burglary, armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. At Tanksley's trial, McClendon and McNair gave testimony which implicated Tanksley in these crimes. The jury returned a verdict of guilty on all counts.

1. Tanksley claims that the trial court erred in instructing McNair that he had to repeat his previous trial testimony or be charged with perjury. We disagree.

During proceedings outside the presence of the jury, the prosecutor informed the trial court of its intention to call McNair as a witness for the State and that she anticipated eliciting the same responses from McNair that McNair had given in his previous trial. McNair's attorney announced that McNair intended to exercise his Fifth Amendment right not to testify, but that he had explained to his client that if the State afforded him immunity under then OCGA § 24-9-28 that the trial court could compel McNair to testify. McNair's counsel further represented that he had discussed with his client the prospects of prosecution for perjury and false swearing if he testified and did so untruthfully. After the prosecutor confirmed that she had requested immunity, the trial court ordered that McNair testify, but that he be granted immunity for his testimony. The trial court then warned McNair that if he gave testimony "that's not true to the transcript from the last trial, if you say something opposite and the district attorney shows it to you so you can read it and refresh your memory – if you lie – that's what we're talking about – if you lie today in your testimony, you'll be in trouble." As the trial court further explained, "[t]his immunity does not mean you can come in here and lie and say anything you want."

When asked if he had an objection, Tanksley's counsel responded that "it sounds like" the trial court had just told McNair that "if you say anything other than

what you said before you'll be in trouble." The trial court responded that, "[i]f he told a lie last time and today he says my story[] [is] different and I lied last time, then he's in trouble for last time." The State subsequently called McNair as a witness.

Relying on *Webb v. Texas*, 409 U. S. 95 (93 SCt 351, 34 LE2d 330) (1972), Tanksley contends that the trial court improperly threatened and intimidated McNair into testifying against Tanksley by admonishing McNair to repeat his previous trial testimony or face a perjury charge. We disagree for several reasons. First, the import of the trial court's instruction was that McNair not "lie today in [his] testimony" and not that he was required to repeat his previous testimony.

Second, the transcript does not show that the trial court abused McNair or treated him in an improper manner. Although McNair had been granted immunity for his testimony, he could "nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing, or contempt committed in testifying or failing to testify." OCGA § 24-9-28 (2008). Thus, the trial court warned McNair against lying in the context of properly informing McNair that the grant of immunity did not extend to giving false testimony.[1] The trial court's statement that McNair

[1] Contrary to Tanksley's suggestion, the trial court was not required to determine if McNair could nevertheless exercise his Fifth Amendment right not to testify. "[T]he trial court's grant of an order of immunity pursuant to OCGA § 24-9-

4

would be in "trouble for last time" if he had given false testimony in the first trial may have gone a little too far in that it implied, perhaps, that McNair's truthful testimony in Tanksley's trial could be used against him notwithstanding the grant of immunity, but the trial court's statement fell short of the threatening remarks to a witness which were found to violate the defendant's right to due process in *Webb*. See, e. g., *Hester v. State*, 219 Ga. App. 256, 257 (2) (465 SE2d 288) (1995) (finding that, "[a]lthough the court here may have gone a little too far in 'assuring' [witness] he would be prosecuted for perjury if he gave conflicting testimony," there was nevertheless no showing that appellant's right to due process was violated). Further, as discussed *infra*, Tanksley was free to cross-examine McNair about whether he felt pressured by the trial court's comments to give testimony consistent with his testimony in the first trial. In addition, McNair was in court with his own counsel, who voiced no concern that McNair was being threatened or bullied. See, e. g., *Terry v. State*, 308 Ga. App. 424, 428 (707 SE2d 623) (2011) (where witness consults with independent counsel, the potential for improper coercion is diminished).

_____

28 (a) removed . . . any right to invoke the privilege against self-incrimination." *Hawkins v. State*, 175 Ga. App. 606, 609 (1) (333 SE2d 870) (1985). See also *Willard v. State*, 244 Ga. App. 469, 471 (1) (a) (535 SE2d 820) (2000) (witness could not plead the Fifth Amendment on ground that statutory immunity did not protect him from prosecution for perjury during his trial testimony).

5

Third, under *Webb*, "judicial or prosecutorial intimidation that dissuades a potential defense witness from testifying for the defense can, under certain circumstances, violate the defendant's right to present a defense." (Citation and footnote omitted.) *Terry*, 308 Ga. App. at 426. Here, however, the alleged intimidation did not dissuade a defense witness from testifying. Accordingly, Tanksley was not denied "the right to present his own witnesses to establish a defense." *Webb*, 409 U. S. at 98.

Lastly, to the extent Tanksley infers that his right to due process of law was denied by the trial court's admonishment of McNair, we disagree.

> Due process guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice. In order to declare a denial of it a court must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

(Citation and punctuation omitted.) *Terry*, 308 Ga. App. at 427. See *Frei v. State*, 252 Ga. App. 535, 535-536 (1) (557 SE2d 49) (2001) (notwithstanding allegation that trial court intimidated witnesses and bullied trial counsel, appellant did not receive an unfair trial). Tanksley was free to explore on cross-examination the possibility that McNair interpreted the trial court's statements as directing him not to change his

6

previous testimony, and he did so. We conclude that the trial court's instructions to McNair did not deprive Tanksley of a fair trial, nor did the trial court err in admonishing McNair not to lie in giving his testimony.

2. Tanksley further contends that the trial court committed plain error in charging the jury. Again, we disagree.

Tanksley had no objection below to the trial court's jury charge. On appeal, however, he contends that portions of the charge constituted plain error. See OCGA § 17-8-58. In that context, "[t]he proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." (Citation and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). If these three inquiries are answered affirmatively, and if the error seriously affects the fairness, integrity, or public reputation of the proceedings below, the appellate court has the discretion to reverse. Id.

(a) Tanksley contends that the trial court committed plain error in charging the jury that "[t]he offense of armed robbery is committed merely by armed taking of property of another regardless of whether its value is great or small." This was an accurate statement of the law. See *Tarver v. State*, 278 Ga. 358, 360 (1) (602 SE2d 627) (2004). Tanksley nevertheless argues that the instruction omitted the essential

7

element of armed robbery that a taking must be from the person or "the immediate presence" of another and so conflicted with the previously charged statutory definition of the crime. It is well established, however, that "jury instructions must be considered as a whole in determining whether the charge contained error." (Citation and punctuation omitted.) *Vergara v. State*, 287 Ga. 194 (3) (b) (695 SE2d 215) (2010). In context, as shown by those portions of the charge preceding and following the language complained of by Tanksley, the trial court's instruction did not provide the jury with conflicting guidance, nor omit any essential element of the crime of armed robbery. See id. (holding that "review of the record establishes that appellant's arguments regarding one portion of the trial court's armed robbery instruction are completely obviated by other portions of that instruction not quoted by appellant"). The instruction was not plain error.

(b) Tanksley further claims that the trial court committed plain error in charging the jury that in order to constitute armed robbery, "[i]t is not required that the taking be from the actual contact of the body, but if it is from under personal protection it will suffice." Tanksley acknowledges that there is appellate authority which supports the principle expressed by the charge. See *Felder v. State*, 270 Ga. 641, 643 (2) (514 SE2d 416) (1999) (taking need not "necessarily be from the actual

8

contact of the body, but if it is from under the personal protection that will suffice")
(citation and punctuation omitted). Tanksley maintains that the charge was
nevertheless misleading because it did not limit in any way the distance over which
a victim's personal protection over property could extend for purposes of an armed
robbery. The trial court's charge also provided, however, that "immediate presence
as used in our armed robbery statute is applicable even if the taking occurred out of
the actual physical presence of the victim if what was taken was under his control or
his responsibility *and if he was not too far distant.*" (Emphasis supplied.). See *Young
v. State*, 290 Ga. 392, 396 (4) (721 SE2d 855) (2012). Viewing the charge as a whole,
it is unlikely that the jury was misled or confused into believing that, for purposes of
armed robbery, the distance of the victim from the property taken was not relevant.
See, e. g., *Daniel v. State*, 296 Ga. App. 513, 518 (3) (675 SE2d 472) (2009) (viewing
the charge as a whole, "we are satisfied that the jury was not misled or confused").
The legal error, if any, was not "clear or obvious, rather than subject to reasonable
dispute." (Citation and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a). It follows
that Tanksley does not show plain error.

(c) Tanksley also alleges plain error in that the trial court charged the jury that
it would be authorized to acquit the defendant if it found he had no knowledge that

the crimes were being committed. Tanksley refers us to the following portion of the trial court's instruction:

> If you find from the evidence in the case that the defendant had no knowledge that a crime was being committed or that the defendant did not knowingly and intentionally commit, participate, aid or abet in the commission of the alleged offense, then it would be you duty to acquit the defendant.

Tanksley contends the foregoing is the charge that we found to be incorrect in *Nanthabouthdy v. State*, 245 Ga. App. 456, 458 (2) (538 SE2d 101) (2000). However, the charge at issue in *Nanthabouthdy* directed that the jury "would be authorized to convict the defendant" if they found either knowledge of the crime or intent to participate in the crime, and not, as here, that the jury had a "duty to acquit" if the defendant had no knowledge of the crime or lacked intent to participate therein. Id.

That portion of the trial court's charge identified by Tanksley was not erroneous.[2]

See, e. g., *Ahn v. State*, 279 Ga. App. 501, 503 (2) (631 SE2d 711) (2006).

(d) Lastly, Tanksley claims the trial court's charge constituted plain error in

that the trial court charged the jury that if it found a conflict in the evidence

> you should settle this conflict, if you can, without believing that any
> witness made a false statement. If you cannot do this, then you should
> believe that witness or witnesses you think best entitled to belief. You

---

[2] From our review of the record, it appears that Tanksley may have misquoted that portion of the trial court's charge that he wished to assert was plain error. Immediately following that portion of the charge set forth by Tanksley in his appellate brief, the trial court charged the jury:

> On the other hand, should you find beyond a reasonable doubt that the
> defendant had knowledge that the crimes were being committed and that
> he – or that he knowingly participated, aided, or abetted in the
> commission thereof, then you would be authorized to convict the
> defendant.

The trial court's use of the disjunctive "or," in an apparent slip of the tongue, was improper. See *Nanthabouthdy*, 245 Ga. App. at 458 (2). However, the trial court had correctly charged the jury that if it found that Tanksley had no knowledge of the crime or had not knowingly participated in the crime, it had a duty to acquit. The trial court also properly charged the jury on intent, mere association, party to a crime, and the elements of the alleged offenses. See id. The trial court's charge was unlikely to have affected the outcome of the case and did not rise to the level of plain error. See *Kelly*, 290 Ga. at 33 (2) (a); *Nanthabouthdy*, 245 Ga. App. at 458 (2).

must determine what testimony you will believe, and what testimony you will not believe.

This is consistent with the charge which our Supreme Court found to be without error in *Mallory v. State*, 271 Ga. 150, 151 (2) (517 SE2d 780) (1999). Further, the charge did not require the jury to believe the testimony of the State's witnesses. See *Guyton v. State*, 281 Ga. 789, 791 (2) (642 SE2d 67) (2007). The charge was not plain error. See *Plummer v. State*, 315 Ga. App. 829, 830 (728 SE2d 341) (2012).

3. Tanksley was sentenced as a recidivist under OCGA § 17-10-7 (c) to serve a total of life plus 45 years. OCGA § 17-10-7 (c) provides that any person who has been convicted of three prior felonies must, upon conviction for a fourth felony, "serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served." Tanksley argues that because there was no evidence of his alleged prior convictions he was improperly sentenced as a recidivist under OCGA § 17-10-7. We agree.

At the sentencing hearing, the prosecutor represented that the State had filed a notice seeking recidivist punishment and that she was in possession of certified copies of Tanksley's three prior convictions. The prosecutor then notified the trial

12

court that "based on the indictment there may have been only two convictions," but then indicated that, as to the third, "the Clerk's office has advised that a certified copy is on the way down to the courtroom." Defense counsel acknowledged the maximum sentences the trial court was required to impose if Tansksley was a recidivist but asserted that this was only "assuming there is a hard copy of that third conviction." The prosecutor then purported to tender certified copies of two of Tanksley's prior convictions into evidence as Exhibits 1 and 2, "and as soon as it comes down [Exhibit] 3 for purposes of sentencing." The trial court did not admit the tendered convictions into evidence, but asked the clerk, court reporter, and Tanksley to be "held back here until we get the certified copy." There is nothing else on the record about the matter. Tanksley further shows, and the State does not dispute, that certified copies of Tanksley's three alleged convictions were never entered in the record.

"The burden is on the state to produce competent evidence of a prior conviction for purposes of sentencing." *Brinkley v. State*, 301 Ga. App. 827, 830 (2) (689 SE2d 116) (2009). Further, "a trial court cannot rely upon the hearsay statement of a prosecutor to establish a fact for purposes of sentencing." Id. at 831 (2). The State argues that the prosecution, defense counsel, and judge were all proceeding "on the assumption" that there were three convictions and that we should therefore presume

that the sentencing was valid.[3] But defense counsel did not waive the requirement that the convictions be proven by the State, which failed to carry its burden of showing by competent evidence that Tanksley was a recidivist. Accordingly, Tanksley's sentence must be vacated and the case remanded to the trial court for resentencing.[4] See *Brinkley*, 301 Ga. App. at 830-831 (2); *Williams v. State*, 235 Ga. App. 876, 877 (510 SE2d 848) (1999).

*Judgment of conviction affirmed, sentence vacated and case remanded with direction for resentencing. Miller and Ray, JJ., concur.*

---

[3] The State, after presenting its argument, acknowledged that there is authority which "strongly militate[s] against its position on this issue."

[4] The State is not precluded from introducing evidence of Tanksley's prior convictions at his resentencing. See *Railey v. State*, 273 Ga. App. 520, 522 (3) (615 SE2d 609) (2005).