A95A0224. SING v. THE STATE.

(458 SE2d 493)

Smith, Judge.

Miguel Sing was found guilty by a jury of possession of cocaine with intent to distribute. OCGA § 16-13-30 (b). His motion for a new trial was denied. He appeals, raising challenges to the sufficiency of the evidence to support his conviction and to the trial court's denial of a motion for mistrial. We affirm.

The evidence presented at trial showed that Chamblee police officers observed a large amount of foot traffic going in and out of an apartment and received information from a confidential informant that drugs were being sold out of that apartment by several Hispanic men. They arranged for the informant to make a controlled buy with a marked twenty-dollar bill. After buying the drugs, the informant described the seller as a "heavy-set Hispanic male" who was short and in his twenties.

The officers obtained a search warrant for the apartment and executed it approximately a week after the controlled buy. They found Sing in the living room of the apartment. Three other men were found in a bedroom. Three "hits" of crack cocaine were found in the trouser pockets of one of the men in the bedroom. No other drugs were found on the person of any of the other occupants, including Sing. None of the men present in the apartment met the description of the seller given by the informant, and the officers concluded that the seller was not present in the apartment when the warrant was executed. A crack pipe was found in a couch in the living room and 45 individually packaged "hits" were discovered in a wicker basket containing plastic ivy hanging on the living room wall. Two officers testified Sing informed them it was his apartment, and that he knew drugs were being sold there but would not disclose the identity of the seller.

Sing denied telling the officers it was his apartment. He testified he told them he lived there but shared the apartment with three other men, all of whom contributed to the rent and utilities. Only the gas bill was in Sing's name. Although he testified he "would suspect"

the large number of visitors to the apartment came to buy drugs, he claimed he never saw the drugs or anyone selling them in the apartment, and it was "a surprise" to him that such a large amount of drugs was in the apartment. He denied knowledge of the seller's identity. He testified he was arrested after the officers threatened to arrest him if the four men found in the apartment did not reveal the owner of the drugs found in the basket.

1. Sing argues this evidence was insufficient to support his conviction. He maintains the State proved nothing but his mere presence at premises where drugs were found. We do not agree.

Sing correctly states that where it is affirmatively shown that others had equal access or opportunity to commit the crime, a defendant's mere presence at premises where contraband is discovered, without more, is insufficient to support a conviction. See, e.g., *Paden v. State*, 216 Ga. App. 188, 189-190 (1) (453 SE2d 788) (1995). Where there is evidence connecting the defendant to the contraband other than his own equal access, however, it is for the jury to determine his guilt or innocence. *Williams v. State*, 207 Ga. App. 782, 784 (4) (429 SE2d 153) (1993). Sing relies heavily upon *Williams*, in which we reversed the conviction of one of four people charged with possession of cocaine with intent to distribute. The facts in *Williams* are distinguishable from those here, however. In *Williams*, the search of a mobile home revealed contraband located in a locked bedroom to which the defendant whose conviction we reversed had no access. In addition, her co-defendant claimed ownership of the cocaine and exculpated her. Id. In *Paden*, we reversed the conviction because no evidence of the defendant's guilt was introduced other than his presence on premises where contraband was found.

Here, however, despite Sing's testimony that he had no knowledge of the presence of large amounts of cocaine in the apartment at which he lived for approximately five months, he conceded that the apartment had many visitors and that he suspected drugs were being sold. In addition, although Sing denied making such a statement, two officers testified he admitted it was his apartment, he knew drugs were being sold there, and he knew who was selling them but would not disclose the seller's name. Because evidence other than mere presence implicated Sing, it was for the jury to determine his guilt or innocence. *Williams*, supra at 784 (4). The evidence was sufficient to authorize the jury to find him guilty.

2. At the beginning of the trial, defense counsel stated to the court that he believed any mention of Sing's illegal immigration status would be prejudicial. The trial court agreed that it saw no need for that to come up, and the prosecutor concurred that at that moment he did not, either. The matter was then dropped.

The State never brought up Sing's immigration status. On cross-

examination, however, defense counsel inquired whether a police officer ever asked Sing for identification, such as a driver's license. The officer immediately replied: "He [Sing] stated he was here illegally." Sing then moved for a mistrial, which the trial court denied.

The trial court found that the witness's answer was responsive to defense counsel's question when he quoted Sing. The court also pointed out that it had once before become necessary for the court to step in to prevent mention of this matter in response to a question posed by defense counsel. Witnesses were advised to make no further mention of Sing's illegal status, and the court gave a curative instruction, informing the jury that "the remark about this man's status in the country has nothing whatsoever to do with the guilt or innocence in this case. And I'll instruct you to let it play no part in your deliberations in the case."

Evidence of illegal immigration status is, of course, inadmissible under these circumstances, as stated by the Georgia Supreme Court recently in *Sandoval v. State*, 264 Ga. 199, 200 (2) (a) (442 SE2d 746) (1994). After the trial judge informed counsel that he proposed to deny the motion for mistrial and informed him of the substance of the curative instruction he would give the jury, counsel stated his "objection continues then," but he did not renew his motion for mistrial after the curative instruction was given. Even if his "continuing objection" was sufficient to preserve an issue regarding the effectiveness of the instruction, it did not serve to preserve the issue regarding the denial of the motion for mistrial, which is the error enumerated on appeal. *Garcia v. State*, 207 Ga. App. 653, 657 (2) (a) (428 SE2d 666) (1993). Sing waived this issue by failing to renew his motion for mistrial after the instruction was given. *McBride v. State*, 213 Ga. App. 857, 858 (3) (b) (446 SE2d 193) (1994).

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED MAY 31, 1995 —
RECONSIDERATION DENIED JUNE 14, 1995 — 

Miguel Sing, *pro se.*
J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney, for appellee.