### A10A1728. TERRY v. THE STATE.
(707 SE2d 623)

PHIPPS, Presiding Judge.

After a jury trial, Montique Terry was convicted of cocaine possession. On appeal, Terry contends that the trial court erred by denying his motion for new trial, which was based upon his claim that the prosecutor's admonishment of the sole defense witness deprived him of due process. For reasons that follow, we affirm.

Terry's drug conviction was supported by evidence of the following. On March 8, 2007, six law enforcement officers arrived at a residence to serve an arrest warrant on a woman there. Hearing a commotion inside, several officers went to the back of the residence, where they observed two men jump from a window to the ground. The first man who jumped complied with the officers' commands to halt. The second man, Terry, tried unsuccessfully to flee. While Terry was running, two officers saw him drop "in the rear yard of the house" a baggie of what was later determined to be 0.59 gram of a substance containing cocaine. Incident to his arrest at the scene, Terry was searched, and officers found on his person $955 in United States currency.

The sole defense witness was the first man who jumped from the window. An admitted user of crack cocaine for about 25 years, he characterized the area as a "hoodlum neighborhood" and the area behind the residence as wooded "nobody property." He testified that numerous young men who "sell drugs . . . hide them down in the woods. . . . They go back there and get the drugs and come back on the street and sell them. And go back there and hide them back there in the back." The witness further explained that he and Terry had jumped out the window "[b]ecause we thought it was a robbery. . . . I thought folks was trying to rob the folks or whatever because that's what they do in my neighborhood over crack."

On motion for new trial, Terry asserted that, before his witness testified, that witness had indicated out of court that the cocaine was his. When the witness was called to the stand, however, he did not claim the cocaine as his own. Terry blamed the prosecutor, alleging in his motion:

> As his trial began, [Terry] had an ace in the hole: a witness with a known crack habit . . . who was willing to exculpate him. His prospects soured, though, when the prosecutor

suggested to the witness that testifying could land him [the witness] in prison for years. This threat constituted prosecutorial misconduct; and in light of the importance to the case of the testimony that the threat deterred, that misconduct warrants reversal of . . . Terry's conviction.

The impermissible admonishment alleged by Terry had occurred during an interview conducted the day before the witness testified. Counsel for both sides had attended the interview. And to support his claim on motion for new trial, Terry called at the hearing his trial lawyer, who testified:

When we talked to [the defense witness], he had indicated that the half gram was, in fact, his. However, when [the prosecutor and I] together were talking to him[,] [the prosecutor] indicated that, well, if you're going to take this case, you're going to be the one that's going to do time behind it, essentially. . . . I don't want to say his exact words because I don't recall the exact words. But the gist of it was, if you testify to that, then I'm going to prosecute you, and you're going to go to jail. That's the gist of what he said.

On appeal, Terry maintains that he was thus entitled to a new trial, citing *Webb v. Texas*[1] and other opinions derived therefrom. In *Webb*, the sole defense witness, who was then serving a prison sentence, was called into the courtroom during a jury recess.[2] The trial judge, on his own initiative, undertook to admonish the witness, saying:

If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [sic] is that you would get convicted of perjury and that it would be stacked onto what you have already got. . . . If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole. . . . [I]f you lie you can get into real trouble.[3]

The witness then refused to testify for any purpose and was excused

---

[1] 409 U. S. 95 (93 SC 351, 34 LE2d 330) (1972).

[2] Id.

[3] Id. at 96.

by the court.[4] Convicted, the defendant argued on appeal that the judge's conduct had deprived him of due process of law by driving his sole witness off the witness stand.[5] Agreeing,[6] the *Webb* Court reiterated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.[7]

The *Webb* Court noted that the fact that the witness had been willing to come to court to testify in the defendant's behalf, but refused to do so only after the judge's lengthy and intimidating warning (including threats, at least some of which may have been beyond the power of that judge to carry out), strongly suggested that the judge's comments were the cause of the witness's refusal to testify.[8] Therefore, the *Webb* Court reversed the judgment of conviction.[9]

Relying on principles underlying *Webb*, "courts have held that judicial or prosecutorial intimidation that dissuades a potential defense witness from testifying for the defense can, under certain circumstances, violate the defendant's right to present a defense."[10] Also well established, however, is that "the right to present a defense, and its concomitant right to compulsory process, are not unqualified; they are subject to 'countervailing public interests.'"[11]

> A defendant's right to present a defense . . . is not absolute.
> The right may, in appropriate cases, bow to accommodate

---

[4] Id.

[5] Id. at 97.

[6] Id. at 98.

[7] Id. (citation and punctuation omitted).

[8] Id. at 97.

[9] Id. at 98.

[10] *United States v. Williams*, 205 F3d 23, 29 (2d Cir. 2000), citing, inter alia, *United States v. Golding*, 168 F3d 700, 703-705 (4th Cir. 1999) (government intimidation dissuaded witness from testifying and prosecutor further abused her power by commenting on witness's failure to testify); see *United States v. Vavages*, 151 F3d 1185, 1190-1192 (9th Cir. 1998) (prosecutor dissuaded witness from testifying and commented on defendant's failure to present corroborating witnesses, and trial judge failed to scrutinize basis for witness's invocation of Fifth Amendment right against self-incrimination).

[11] *Williams*, supra.

other legitimate interests in the criminal trial process. For example, the accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. The right to present a defense, as a result, does not displace traditional testimonial privileges. The Fifth Amendment privilege, no less, reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. Several courts of appeal, therefore, have held a defendant's right to present a defense does not include the right to compel a witness to waive his Fifth Amendment privilege against self incrimination.[12]

Accordingly, the due process analysis that *Webb* dictates must be conducted on a case-by-case basis.[13]

Due process guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice. In order to declare a denial of it [a court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.[14]

Under this test, no violation of due process was demonstrated. Terry has not shown that the prosecutor's conduct dissuaded a defense witness from testifying or that the prosecutor induced materially less favorable testimony.[15] This case is not like *Webb*, where the trial judge, without any basis in the record to conclude the witness might lie, delivered a lengthy and unnecessary harangue to the defense witness about the possibility of prosecution — effectively driving the witness off the stand.[16] Terry's witness testified and did so in Terry's favor. That witness, an admitted 25-year user of crack cocaine, described the area behind the residence where the cocaine

---

[12] *United States v. Serrano*, 406 F3d 1208, 1215 (II) (A) (10th Cir. 2005) (citations, punctuation and emphasis omitted).

[13] Id. at 1216; see *Hood v. Carsten*, 267 Ga. 579, 580-581 (481 SE2d 525) (1997) (due process is flexible and calls for such procedural protections as the particular situation demands, and the amount of process required must necessarily depend on the circumstances in each case).

[14] *United States v. Valenzuela-Bernal*, 458 U. S. 858, 872 (III) (102 SC 3440, 73 LE2d 1193) (1982) (citation and punctuation omitted), cited in *Williams*, supra at 31.

[15] See *Griffin v. Davies*, 929 F2d 550, 553 (III) (10th Cir. 1991) (to establish a due process violation based on denial of right to compulsory process, there must be a plausible showing that an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense).

[16] See *Webb*, supra at 98; see generally *Williams*, supra at 30.

was found as woods, generally used by individuals in the drug trade to stash their supplies. Terry's witness also provided a reason for his and Terry's flight when numerous unexpected individuals converged upon the residence.

What is more, it has been recognized that the potential for unconstitutional coercion by a government actor diminishes when a defendant's witness has consulted with an independent attorney.[17] In this case, when Terry's witness took the stand, he did so with his own counsel, who informed the court before the witness testified that, following the conversation with counsel, the witness "doesn't have anything else to say to either counsel at this point. His testimony is what it is going to be." Thereupon, the court asked Terry's witness, "Are you prepared to testify?" The witness replied, "Yes, ma'am."

When Terry's witness took the stand, he did not invoke the Fifth Amendment, nor did he otherwise refuse to answer any question posed to him. Terry's lawyer did not ask the witness whether — despite his generalized drug-use characterization of the area behind the residence located in the "hoodlum neighborhood" — the cocaine seized in this case belonged to him. Thus, Terry's lawyer made no attempt to show that the defense witness had made the purported prior inconsistent statement (that the cocaine, in fact, had belonged to him),[18] acknowledging at the new trial hearing that he simply had made a strategic decision not to ask the witness that question.[19] Given these circumstances, Terry has not shown that the prosecutor's conduct impermissibly eroded "the right to present [his] version of the *facts*."[20] While Terry *has* shown that the prosecutor warned his witness about the consequences of claiming the cocaine

---

[17] See *Serrano*, supra at 1216.

[18] See *Edmond v. State*, 283 Ga. 507, 510 (6) (661 SE2d 520) (2008) (prior inconsistent statement of a witness who is present and available for cross-examination may be admitted as substantive evidence or as impeachment evidence if the time, place, person, and circumstances attending the former statement are called to the witness's mind with as much certainty as possible).

[19] On motion for new trial, Terry did not call to the stand his defense witness.

[20] *Webb*, supra at 98 (emphasis supplied); see generally *United States v. Simmons*, 670 F2d 365, 371 (DC Cir. 1982) (there is no due process right to knowingly present perjured testimony); *Williams*, supra at 29-30 (noting preventing perjury, as an example of such a "countervailing public interest" with regard to a defendant's right to present a defense and the concomitant right to compulsory process; noting also that the right to present a defense is designed to serve the truth-seeking function of the trial process and does not grant criminal defendants license to knowingly present perjured testimony). Cf., e.g., *United States v. Heller*, 830 F2d 150, 153-155 (11th Cir. 1987) (record showed that government intimidation deprived defendant of an important defense witness and induced witness to provide false testimony against defendant); *Murray v. State*, 157 Ga. App. 596, 597 (2) (278 SE2d 2) (1981) (on motion for new trial, potential defense witness who refused to testify stated in affidavit that, prior to being called into courtroom during appellant's trial, she wanted to testify but refused to do so because of alleged "threats" from the district attorney and the sheriff, coupled with the trial court's instructions that she could not be forced to testify).

as his own, *Webb* does not stand for the proposition that merely warning a defense witness of the possible consequences of testifying demands reversal.[21]

Our conclusion that the prosecutor's warning to Terry's witness did not warrant a new trial is consistent with our decision in *Murray v. State*.[22] The appellant in that case complained on motion for new trial that a defense witness — an individual who had been jointly indicted for the same criminal activity, but who had entered a guilty plea to a lesser offense — had been "threatened" by the district attorney and sheriff that, if she took the stand and attempted to exonerate the appellant, the state's previous consent to accept her plea to the lesser offense would be withdrawn and she would face the same charge of selling drugs alleged against the appellant.[23] When subsequently called to the stand, that witness invoked the Fifth Amendment privilege and did not testify.[24] This court rejected appellant's claim that the government officials' conduct entitled him to a new trial, finding that the government officials' statements were "not reasonably subject to the devious construction" urged by the appellant and that the appellant's argument was "no more than an assertion that [the witness] should have been allowed to testify that she sold the drugs without being informed of the possible detrimental consequences *to herself* of so doing."[25] Further, this court instructed, the appellant could not complain that his witness chose to exercise that right "any more than any defendant can complain that someone else chose not to take the stand freely in his trial and confess to the crime with which the defendant is charged."[26]

Terry's complaint essentially is that the prosecutor's warning to his witness resulted in that witness's choice not to confess to the crime with which he (Terry) was charged. Even accepting Terry's

---

[21] *United States v. Smith*, 997 F2d 674, 679 (10th Cir. 1993); see *United States v. Thompson*, 130 F3d 676, 687 (V) (C) (5th Cir. 1997) (due process violation does not arise merely because the government warns a defense witness of the consequences of committing perjury); *United States v. Teague*, 737 F2d 378, 382-384 (IV) (4th Cir. 1984) (notwithstanding contact between the prosecutor and an attorney for a witness made in an effort to prevent perjury, no *Webb* violation occurred, where defendant was not deprived of his witness's testimony and the transcript reflected that the witness gave all of the favorable testimony that the defendant could have expected); *Simmons*, supra ("It is hardly a threat for a prosecutor to advise a potential witness, who is telling two stories with respect to a defendant's criminal involvement, that he might be prosecuted for perjury if he testifies falsely."); *United States v. Harlin*, 539 F2d 679, 681 (I) (9th Cir. 1976) (no *Webb* violation, based upon trial judge's warning to co-defendant's counsel that was neither coercive, threatening, grossly improper nor prejudicial).

[22] Supra.

[23] Id. at 597.

[24] Id.

[25] Id. at 598.

[26] Id.

claim that the prosecutor's statements during the interview were improper, for reasons set forth above, Terry has not shown that the prosecutor so interfered with his right to present his defense as to constitute a denial of due process. Nothing in the other opinions relied upon by Terry — *United States v. Viera*[27] or the special concurrence in *Hargett v. State*[28] — compels an outcome in his favor.
*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*

DECIDED MARCH 16, 2011.

*Stephen R. Scarborough*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lenny I. Krick, Christopher M. Quinn, Assistant District Attorneys*, for appellee.

---

[27] 819 F2d 498 (5th Cir. 1987) (reversal was warranted because the prosecutor improperly threatened to indict the defendant's witness and improperly mentioned to the jury that the threatened witness had failed to testify, and the trial court did not provide any curative instruction after defense counsel objected to prosecutor's remarks).

[28] 285 Ga. 82, 89 (674 SE2d 261) (2009) (Sears, J., concurring) (citing *Webb*, supra).