**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2017**

# In the Court of Appeals of Georgia

A17A0370. McGLYNN v. THE STATE.

BETHEL, Judge.

James Harold McGlynn, Jr. appeals from the denial of his motion for a new trial following his conviction for one count of misdemeanor possession of marijuana.[1] On appeal, he enumerates four errors. First, he claims that the trial court erred by denying his motion to disqualify the district attorney's office from prosecuting his case based on an allegation that prosecutorial misconduct had deprived him of his right to due process. Second, he claims the trial court erred by denying his special demurrer to the marijuana possession count in the indictment. Third, he claims the trial court erred by admitting evidence relating to his purchase and use of marijuana the day before his arrest for possession pursuant to OCGA § 24-4-404 (b) and as

---

[1] *See* OCGA § 16-13-30 (j) (1).

intrinsic evidence of the offense. Fourth, he claims that the trial court erred by denying his motion for a directed verdict on the marijuana possession charge based on the equal access doctrine. As each of these claims are without merit, we affirm his conviction.

On appeal, the defendant "is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict." *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citations omitted). So viewed, McGlynn and a co-defendant[2] were stopped by a deputy sheriff for speeding and failure to maintain lane. The co-defendant was driving the vehicle, and McGlynn was seated in the front passenger seat.

After initiating the traffic stop, the deputy approached the passenger side window, which was rolled down. He immediately detected the smell of marijuana, and he asked the co-defendant to exit the vehicle. When asked by the deputy about the marijuana smell, the co-defendant denied knowing about any marijuana in the vehicle.

---

[2] The co-defendant is not a party to this appeal. McGlynn was charged with a single count of possession of marijuana, and the co-defendant was charged with five offenses, which also included possession of marijuana. The co-defendant pled guilty to a number of those offenses, and his case was completed by the time McGlynn's trial began. The co-defendant was called by McGlynn to testify at trial.

McGlynn was instructed to exit the vehicle, and the deputy began searching the vehicle. Under the front passenger seat (where McGlynn had been seated), the deputy located a blue container which held a green leafy substance which later tested positive as marijuana. Both McGlynn and the co-defendant denied owning the blue container. Under the same seat, he also located a potato chip bag in which was held a smoking pipe containing marijuana residue.

The deputy then began searching in the rear compartment of the vehicle, where he located an additional bag containing both marijuana and dried mushrooms- a Schedule I controlled substance. After the search was completed, McGlynn and the co-defendant were arrested and transported to the county jail.

McGlynn was interviewed by a police investigator later that day. In that interview, he told the investigator that he had purchased and smoked some marijuana the day before the arrest. McGlynn also told the investigator that the blue container and the orange smoking pipe found by the officers during the search of the vehicle belonged to him but denied that the marijuana was his.

McGlynn and his co-defendant were indicted. In pre-trial proceedings, McGlynn filed a special demurrer as to the sole count against him for possession of marijuana. That count alleged that, on the day of his arrest, McGlynn "did unlawfully

3

have under his control less than an ounce of marijuana in violation of the Georgia Controlled Substances Act." At the hearing on the demurrer, McGlynn offered testimony regarding the three locations in the vehicle where marijuana had been located (the blue container, the orange pipe, and the bag in the rear compartment). He argued that the terms of the indictment failed to give McGlynn notice as to which marijuana the State alleged him to have been in possession of at the time of the traffic stop, as both McGlynn and the co-defendant were charged with the exact same offense in two different counts of the indictment. The State countered that because McGlynn had admitted to owning the blue container and the orange pipe in his interview with the investigator and because he admitted to recent purchase and consumption of marijuana, he had been placed on sufficient notice of the charge. The trial court denied the special demurrer.

McGlynn also filed a motion in limine to exclude evidence of his use and purchase of marijuana on the day before the traffic stop. The trial court denied this motion, ruling that McGlynn's interview with the police investigator which contained this evidence could be played for the jury at trial. McGlynn also challenged the admission of the evidence on the basis that he had not received adequate notice from the State that it intended to introduce this evidence against him pursuant to Rule 404

4

(b). The trial court also rejected this argument, noting that McGlynn received a copy of the recorded interview and a transcript eight or nine months prior to trial. In addition, the trial court determined that notice was not required because, pursuant to Rule 404 (b), no notice is required when the evidence pertains to "circumstances immediately surrounding the charged crime." The court therefore determined that the evidence could be presented both as intrinsic evidence and to show intent, motive, and knowledge pursuant to Rule 404 (b).

On the morning the trial was to begin, McGlynn made an oral motion to recuse any member of the district attorney's office from prosecuting the case, alleging prosecutorial misconduct. He alleged that an assistant district attorney (ADA) had "confronted" the co-defendant, who McGlynn planned to call as a witness at trial. McGlynn alleged that the ADA "threatened" and "intimidated" the co-defendant, suggesting that the co-defendant would be prosecuted for perjury if he elected to testify in the trial on McGlynn's behalf. Clarifying the facts surrounding this claim, McGlynn's attorney stated that the ADA who had handled the co-defendant's case for the State had spoken to the co-defendant in a room outside the courtroom and asked him what his testimony would be in McGlynn's trial. The co-defendant told the ADA that he planned to claim ownership of all of the marijuana seized from the

5

vehicle. The ADA replied that she did not believe him and indicated to him that false testimony could subject him to a perjury charge, that it would violate the terms of his First Offender probation, and that he could be sent to jail. The co-defendant spoke with his counsel, who advised him that he could be subject to indictment for perjury if he testified falsely in the trial. The co-defendant was advised by his counsel that he should assert his Fifth Amendment right against self-incrimination.

The trial court denied McGlynn's motion to disqualify. At trial, the co-defendant was called as a witness, and he testified regarding his background, his business, his connection to McGlynn, and the reason they were traveling at the time of the traffic stop. He also testified regarding the charges he faced stemming from the traffic stop, including his guilty plea to possession of marijuana. However, he asserted his Fifth Amendment privilege, and he refused to testify with regard to who owned the blue container and the orange pipe found in the vehicle or whether he brought marijuana into the vehicle.

McGlynn was found guilty on the sole count against him for misdemeanor possession of marijuana, for which he was sentenced to one year of probation, a fine, and community service. His motion for a new trial, alleging the same errors he enumerates on appeal, was denied, and this appeal followed.

1. With regard to McGlynn's motion to disqualify the district attorney's office from prosecuting the case, we note at the outset that this Court takes seriously its role both in addressing attorney misconduct and in holding those who allege such misconduct to a high standard of proof. In this case, McGlynn relies on the United States Supreme Court's decision in *Webb v. Texas*, 409 U.S. 95 (93 SCt 351, 34 LE2d 330) (1972)[3] to suggest that his rights to due process were violated. McGlynn argues that the ADA's discussion with the co-defendant before trial ultimately resulted in his decision, on the advice of his own counsel, to assert his Fifth Amendment privilege.

While *Webb* dealt specifically with statements made by a trial judge, this Court has previously noted that either "judicial or *prosecutorial* intimidation that dissuades a potential defense witness from testifying for the defense can, under certain circumstances, violate the defendant's right to present a defense." *Terry v. State*, 308 Ga. App. 424, 426 (707 SE2d 623) (2011) (emphasis supplied). However, such analysis must be undertaken on a case-by-case basis. *Id.* at 427. Here we note, as did

---

[3] In *Webb*, a trial judge directed a number of statements to the defendant's only witness, essentially threatening the witness with perjury charges. *Webb*, 409 U.S. at 97. The judge also implied his personal view that the witness would testify falsely and that a conviction for perjury would affect his supervised release on a sentence from a prior conviction. *Id.* The Supreme Court found that these statements, which prompted the witness to refuse to testify, deprived the defendant of due process and required reversal of his conviction. *Id*. at 98.

the trial court, that nothing in the record suggests that the statements made by the ADA to the witness were legally inaccurate or misleading. In fact, the ADA's comments seem to have been confirmed by the witness's own attorney, who, unlike the ADA, is charged with acting on the witness's behalf and protecting his right and interests. As we observed in *Terry*, "the potential for unconstitutional coercion by a government actor diminishes when a defendant's witness has consulted with an independent attorney." 308 Ga. App. at 428. That these statements by the ADA were later perceived by the witness as threatening is wholly irrelevant to our consideration of this matter. This Court has held that the State "[is] duty bound to inform [the witness] of the possible consequences of admitting under oath" facts that could place the witness in legal jeopardy, "including notifying [the witness] that the criminal law would be fully enforced to the fullest extent against those who violate it." *Murray v. State*, 157 Ga. App. 596, 598 (2) (278 SE2d 2) (1981).

Moreover, we fail to see how McGlynn's due process rights are in any way abridged by the witness's decision to assert his Fifth Amendment privilege following his conversation with the ADA and his own counsel. As we discussed in *Terry*, 308 Ga. App. at 426-27, a criminal defendant's right to present his defense is not absolute, as it must give way to other considerations in the judicial process, including a

8

witness's right to assert testimonial privileges. Although McGlynn's defense may have been hampered by the witness's eve-of-trial decision not to testify regarding ownership of the marijuana and associated paraphernalia, McGlynn was obliged to find other means of making the argument to the jury that he did not own, and was not in possession of, those materials at the time of the arrest.

For these reasons, we agree with the trial court that the record before us does not establish sanctionable conduct on the part of the ADA and affirm the trial court's denial of McGlynn's motion to disqualify.

2. McGlynn next argues that the trial court erred by denying his special demurrer with regard to the marijuana possession charge. He argues that because marijuana was found in various locations and containers throughout the vehicle and because the co-defendant was also charged with marijuana possession in a separate count using identical language, the indictment failed to adequately apprise McGlynn of which marijuana the State claimed he possessed at the time of the traffic stop.

"In reviewing a ruling on a special demurrer, we apply a de novo standard of review, because it is a question of law whether the allegations in the indictment are legally sufficient." *State v. Corhen*, 306 Ga. App. 495, 497 (700 SE2d 912) (2010) (citation omited).

[W]hen determining whether an indictment is sufficient to withstand a special demurrer, the applicable standard is not whether the indictment could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet . . . . When presented with a special demurrer, the court should examine the indictment from the perspective that the accused is innocent, for this is what the law presumes. Nevertheless, the language of an indictment is to be interpreted liberally in favor of the State, while the accused's objections to the indictment, as presented in a special demurrer, are strictly construed against the accused.

*Id*. at 497 (citations and punctuation omitted).

McGlynn's argument essentially asks us to require, in drug possession cases where multiple items of contraband are seized from multiple defendants, that the language of an indictment identify with specificity the exact items of contraband the State believes a particular defendant to have possessed. We find no support in our case law for this proposition.

Applying the *Corhen* test, we find that the language of the indictment adequately described the elements of the charged offense, as it specifically identified the specific code section under which McGlynn was charged.

10

We also find that this language sufficiently apprised McGlynn of the charge he would be required to meet at trial. Under our state's laws, possession of *any* amount of marijuana is punishable as an offense.[4] Thus, a jury's finding that McGlynn was in possession of any of the marijuana found in the vehicle would have been sufficient to convict him, and his only viable defense was to deny possession of all of the marijuana found in the vehicle. In the record and his briefs before this Court, McGlynn indicates that he planned to defend the allegations of the indictment by claiming that all of the marijuana found in the vehicle belonged to the co-defendant. McGlynn called the co-defendant to the stand with the intention of having him claim responsibility for, and ownership of, the marijuana and to exonerate McGlynn. The co-defendant's choice to exercise his Fifth Amendment privilege and not respond to questions on these issues does not change the fundamental strategy that McGlynn employed. We thus fail to see how additional clarification of the indictment would have altered McGlynn's defense.

---

[4] OCGA § 16-13-30 (j) (1) provides that "[i]t shall be unlawful for any person to possess, have under his or her control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana." OCGA § 16-13-2 (b) provides that "any person who is charged with possession of marijuana, which possession is of one ounce or less, shall be guilty of a misdemeanor and punished by imprisonment for a period not to exceed 12 months or a fine not to exceed $1,000.00, or both, or public works not to exceed 12 months."

11

Because the language in the indictment meets both prongs of the test we outlined in *Corhen*, we affirm the trial court's denial of the special demurrer.

3. McGlynn also argues that the trial court's decision to admit evidence from his interview with the investigator in which he admitted to purchasing and smoking marijuana the day before his arrest violated Rule 404 (b). McGlynn filed a motion in limine to exclude such evidence, arguing that the State could not satisfy the requirements of Rule 404 (b). He also challenged the admission of the evidence on the basis that he had not received adequate notice from the State that it intended to introduce this evidence against him pursuant to Rule 404 (b). The trial court rejected this argument, noting that McGlynn received a copy of the recorded interview and a transcript eight or nine months prior to trial. In addition, the trial court determined that notice was not required because, pursuant to Rule 404 (b), no notice is required when the evidence pertains to "circumstances immediately surrounding the charged crime." The trial court ruled that the evidence could be presented both as intrinsic evidence and for the purpose of showing intent, motive, and knowledge.

Rule 404 (b) provides, in pertinent part, that

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity

therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, . . . [or] knowledge . . . . The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

OCGA § 24-4-404 (b). Decisions by the trial court with regard to admission of evidence under Rule 404 (b) are reviewed for abuse of discretion. *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014).

Here, the trial court was within its discretion to determine that McGlynn's statements regarding his purchase and use of marijuana the day before the traffic stop were intrinsic to the charged offense of possessing marijuana. The traditional concept of *res gestae* provided that all the acts and circumstances surrounding the charged offense were admissible even if they reflected upon the defendant's character. *Baughns v. State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016). This rule of admissibility has been carried forward to the new rules of evidence "under the concept of 'intrinsic' evidence, as opposed to 'extrinsic' evidence, i.e., evidence of

13

'other crimes, wrongs, or acts,' which is subject to the admissibility requirements of OCGA § 24-4-404 (b)." *Satterfield v. State*, 339 Ga. App. 15, 19 (1) (a) (792 SE2d 451) (2016) (footnote omitted). "Evidence is intrinsic 'if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'" *Brooks v. State*, 298 Ga. 722, 726 (2), n.11 (783 SE2d 895) (2016) (citation omitted). Here, because of the close temporal connection between McGlynn's purchase and use of marijuana (the prior day) and the traffic stop at which he was found to be in possession of marijuana, the trial court did not abuse its discretion in determining that such evidence was intrinsic to the charged offense.

As the trial court was within its discretion to admit these statements as intrinsic evidence of the offense, it is not necessary for us to consider whether such statements were properly admitted to show McGlynn's intent, motive, and knowledge pursuant to Rule 404 (b) or whether the State provided McGlynn with sufficient notice of its intention to introduce the evidence pursuant to Rule 404 (b).

4. McGlynn next argues that the trial court erred by denying his motion for a directed verdict based on the equal access doctrine. McGlynn argues that the location

14

of the marijuana in the vehicle was in a location that was open, notorious, and easily accessible by the co-defendant and that the State failed to introduce evidence to the contrary. McGlynn similarly argues that the State did not present evidence that the area where the marijuana was located was under McGlynn's exclusive control.

For the equal access rule to rebut the inference of possession, affirmative evidence must show that a person other than the defendant had equal access to the specific location where the contraband was found. *Cochran v. State*, 190 Ga. App. 884, 885-86 (1) (380 SE2d 319) (1989) (physical precedent only). However, when evidence of equal access is shown but "there is evidence connecting the defendant to the contraband other than his own equal access," the jury must resolve the question of guilt or innocence. *Sing v. State*, 217 Ga. App. 591, 592 (1) (458 SE2d 493) (1995) (citation omitted). In *Sing*, the defendant's equal access defense was a jury issue because, although he testified that he had no knowledge of the drugs found in his residence, he had admitted to investigators that he knew drugs were being sold there and that he knew who was selling them. *Id*.

In this case, the location at issue is the area beneath the passenger seat where McGlynn was seated at the time of the traffic stop. A search of that area revealed a blue container containing marijuana as well as a potato chip bag with a pipe

containing marijuana residue. It appears that both McGlynn and the co-defendant had access to that area and that it was not under McGlynn's exclusive control. However, because McGlynn admitted to the investigator that he owned the blue container and the pipe, there is additional evidence in the record connecting McGlynn to those items other than his access to the area where they were found. Although he denied ownership of the marijuana contained in those items, he admitted that he had purchased and smoked marijuana the day before.[5] Accordingly, as in *Sing*, McGlynn was free to raise equal access as a defense, but because other evidence connected him to those items, it was the province of the jury, and not the trial judge, to determine whether the facts support the defense. We therefore affirm the trial court's denial of McGlynn's motion for directed verdict.

*Judgment affirmed. McFadden, P. J., and Branch, J., concur.*

---

[5] As we discussed in Division 3, the trial court had discretion to admit this statement before the jury as intrinsic to the crime and as extrinsic evidence of his motive, intent, and knowledge to possess marijuana at the time of the traffic stop.