**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 12, 2024**

# In the Court of Appeals of Georgia

A23A1683. GREEN v. THE STATE.

RICKMAN, Judge.

Billy Ray Green was tried by a jury and convicted of criminal attempt to commit kidnapping (Count 1), criminal attempt to entice a child for indecent purposes (Count 3), and simple assault (Count 4).[1] On appeal, he contends that the trial court erred in denying his motion for directed verdict as to Counts 1 and 3 of the indictment and that the evidence was insufficient to support the verdict on the other counts.[2] He also

---

[1] Green was also indicted for and found guilty of criminal attempt to commit false imprisonment (Count 2), but that count merged with the attempted kidnapping count for sentencing purposes.

[2] Although Green challenges the sufficiency of the evidence on the criminal attempt to commit false imprisonment charge, "[w]e need not consider an enumeration of error which addresses the sufficiency of the evidence to convict on a count on which the trial court failed to enter judgment." (Citation and punctuation

challenges the admission of certain evidence deemed intrinsic by the trial court. For the reasons that follow, we affirm in part and reverse in part.

We review the denial of a motion for directed verdict under the same standard used to determine the sufficiency of the evidence to support a conviction. *Foston v. State*, 342 Ga. App. 508, 508-509 (804 SE2d 151) (2017). Accordingly,

> we view the evidence in the light most favorable to the jury's verdict. The accused is no longer entitled to a presumption of innocence, and we do not weigh the evidence or determine witness credibility but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citation and punctuation omitted.) Id. at 509. Although Green questions whether some of the evidence at trial was properly admitted, when we review the sufficiency of the evidence, "we consider *all* the evidence admitted at trial, regardless of whether the trial court erred in admitting some of that evidence." (Citation and punctuation omitted; emphasis in original.). *Boles v. State*, 316 Ga. 209, 215 (2) (887 SE2d 304) (2023).

---

omitted.) *Kollie v. State*, 301 Ga. App. 534, 540 (3) (687 SE2d 869) (2009).

2

So viewed, the record shows that on March 12, 2021, at approximately 5:30 p.m., the fifteen-year-old victim was taking one of her dogs for a walk in her neighborhood when a red car pulled up beside her. The driver told the victim that her dad had called him and wanted him to bring her to him. Although the victim did not recognize the driver, he used her dad's first name.[3] The driver then opened the passenger side door and reached his arm out toward her. When she refused to get into the car, the driver got angry, and she backed away from the car. The victim's landlord then turned into the neighborhood in her car, and the driver of the red car slammed his car door, backed up, and sped away. During the incident, the victim was so scared that she was "freaking out."

After the red car left, the victim called her dad, who was at work, and he told her to call the police. The victim called 911, and although clearly distraught, was able to explain what had happened. The responding officer from the Barrow County Sheriff's Office obtained a general description of the car and the driver, and another Barrow County officer located a suspect in a nearby CVS parking lot. The officers

---

[3] The victim's father testified that he did not know Green.

3

conducted a show up at the CVS, where the victim positively identified Green as the driver of the red car. Green was 63 years old at the time.

When the officer initially approached Green at CVS, Green said that he had just arrived but later said that he had been there all day. He repeatedly suggested that the officer go inside the CVS and confirm with store employees that he had been there all day. When the officer did so, he learned that Green had interacted with two female employees that day.

One of those female employees, who was 39 at the time of trial, testified that she had seen Green in the CVS parking lot several times previously and that, on March 12, 2021, he came into the store and asked for assistance walking back to his car. When she offered to call 911, he repeatedly said "no," and when she actually initiated the call, he ran out the door. Green later spoke to her when she went outside for a break, asking if she was "ready for a good time." And when she left at the end of her shift at approximately 5:00 or 5:30 p.m., she noticed that Green had moved his car next to her car. As she walked toward her car, Green said, "I can show you a few tricks." She testified that Green did not try to touch her, but tried to coax her into his car to "go do things with him."

Another CVS employee, who was 27 at the time, testified that on March 12, 2021, Green told her that he needed help getting to his car. The employee informed Green that she was going to get her manager to help, and he discouraged her from doing that and started going out the door. When she and her manager walked out the front door behind him, Green asked them not to call the police.

After the minor victim identified Green, he was arrested, and a subsequent search of his vehicle revealed a softball bat, a baseball bat, a blanket, and a stuffed unicorn.[4] He was later indicted for criminal attempt to commit kidnapping, criminal attempt to commit false imprisonment, criminal attempt to entice a child for indecent purposes, and simple assault.

At the conclusion of the State's case, Green moved for a directed verdict on Count 1 and Count 3 of the indictment . The trial court denied the motion as to both counts. The jury subsequently found Green guilty on all four counts, and he was convicted on Counts 1, 3, and 4. This appeal followed.

1. Green contends that the trial court erred in denying his motion for a directed verdict on Count 1, which alleged that he attempted to commit kidnapping when he

---

[4] At the scene, Green stated that he had the bats because he was a ball player, but at trial, he testified that he was planning to give them to his great-grandson.

"attempted to entice [the victim] to enter his vehicle under false pretenses and reached out of his vehicle toward her."[5]

"A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. The offense "consists of three elements: first, the intent to commit the crime; second, the performance of some overt act toward[] the commission of the crime; and third, a failure to consummate its commission." (Citation and punctuation omitted.) *Wittschen v. State*, 259 Ga. 448, 448 (1) (383 SE2d 885) (1989). Green challenges the second element and argues that his actions did not rise to the level of a substantial step toward the crime of kidnapping.

"Whether an act qualifies as a 'substantial step' toward commission of a crime is a question of degree, and depends upon the circumstances of each case." (Citation and punctuation omitted.) *Gonzalez v. State*, 359 Ga. App. 147, 150 (1) (b) (857 SE2d 88) (2021). "The 'substantial step' requirement shifts the emphasis from what

---

[5] "A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § § 16-5-40 (a).

remains to be done to what the actor has already done. The fact that further steps must be taken before the crime can be completed does not preclude [] a finding that the steps already undertaken are substantial." (Citation and punctuation omitted.) *English v. State*, 301 Ga. App. 842, 843 (689 SE2d 130) (2010).

Here, the evidence showed that neither the victim nor her father knew Green prior to this incident. In addition, although the acts were not directly linked to Green, the victim's father testified that for two days in a row prior to the incident, he came home and found that his mail had been ripped open and left inside the mailbox. Under the circumstances, it was in the jury's province to conclude that Green's overt act of seeking to lure the minor victim into his car by falsely claiming that her father – whom he referenced by name – needed her and opening the car door and reaching out toward her as encouragement to get into the vehicle with him constituted a substantial step toward the commission of the crime of kidnapping. See generally *Wittschen*, 259 Ga. at 448 (1); see also *Johnson v. State*, 284 Ga. App. 147, 148-149 (1) (b) (643 SE2d 556) (2007) (jury authorized to conclude that had victim consented to defendant's request, he would have performed oral sex on her, thereby committing aggravated child molestation, and that defendant's inquiry about engaging in oral sex constituted a

7

substantial step toward the commission of that crime). Accordingly, we affirm Green's conviction for criminal attempt to commit kidnapping.[6]

2. Green contends that the trial court erred in denying his motion for directed verdict on Count 3, which alleged that he attempted to entice the minor victim "to enter his vehicle for the purpose of committing indecent acts."

"A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a). "Although a conviction under OCGA § 16-6-5 need not be based upon evidence that an act of indecency or child molestation was accomplished or even attempted, a conviction under that statute must nevertheless be based upon some evidence that *an act of indecency or child molestation was the intended motivation for the enticement.*" (Emphasis in original.) *Lasseter v. State*, 197 Ga. App. 498, 499 (1) (399 SE2d 85) (1990).

In *Phillips v. State*, 354 Ga. App. 88 (840 SE2d 165) (2020), this Court considered the sufficiency of the evidence to support the defendant's convictions for

---

[6] Green's sentence for this conviction is ten years in confinement.

criminal attempt to entice three minor victims for indecent purposes. One victim testified that the defendant, whom she did not know, pulled up next to her in his truck as she was walking down the street and then pointed at her and gestured for her to get into the passenger seat of his truck. Id. at 91-92 (1). Another victim testified that, while she was riding her bicycle, the defendant began following her in his truck. He subsequently stopped the truck, rolled down the window, told her that he liked her hair, and asked if she wanted "to put her bike in the back of his car and go." Id. at 92 (1). And the third victim testified that while she and her friend stood in front of her friend's house, the defendant drove past in his truck and made a money gesture to her. Id. We held the evidence was insufficient to sustain the defendant's convictions as to any of the victims because "the State failed to present any evidence to show that an act of indecency or child molestation was the intended motivation for [the defendant's] attempted enticement of the victims." Id.

Here, there was evidence that Green attempted to entice the minor victim into his vehicle, but the victim denied that Green said anything about wanting to take her somewhere else to "try to have relations with [her]" or anything similar. The State argues that Green's arguably suggestive prior comments to one of the CVS employees

constituted evidence of Green's motivation for enticing the minor victim. But Green's comments to the CVS employee, while upsetting, were directed to another adult and were not evidence of the motivation required here. What is lacking here, as was the case in *Phillips*, is evidence that "an act of indecency or child molestation was the intended motivation for [Green's attempted] enticement" of the minor victim. *Lasseter*, 197 Ga. App. at 499 (1). Compare *Peavy v. State*, 159 Ga. App. 280, 281-282 (1) (a) (283 SE2d 346) (1981) (evidence of motivation for enticement sufficient where defendant attracted the children to his van where he asked them if they knew anyone who took dirty pictures). As a result, we must reverse Green's conviction for this offense. See *Phillips*, 354 Ga. App. at 92 (1); *Lasseter*, 197 Ga. App. at 499 (1).

3. Green contends that the evidence was insufficient to support his conviction for simple assault. For that charge, the indictment alleged that he "placed [the victim] in reasonable apprehension of receiving a violent injury by reaching out of his vehicle toward[] her."

"A person commits the offense of simple assault when he or she either: (1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent

10

injury." OCGA § 16-5-20 (a). "To support an assault conviction, the injury that a victim apprehends from a defendant's act must be 'imminent and violent.' The apprehension of future injury is not sufficient to convict a defendant of simple assault." (Citations and punctuation omitted; emphasis omitted.) *In the Interest of T. P.*, 356 Ga. App. 445, 448-449 (847 SE2d 629) (2020).

Here, the victim testified that Green reached his hand out toward her, that he was angry when she refused to get into his car, and that she was extremely scared during the incident. There was no evidence, however, that Green "made any threatening, physical gesture from which a factfinder could find a demonstration of violence." *In the Interest of T. P.*, 356 Ga. App. at 448. As a result, we conclude that the evidence was not sufficient for a reasonable trier of fact to conclude, beyond a reasonable doubt, that Green's act of opening his car door and reaching his arm out toward the victim caused her reasonably to apprehend immediately receiving a violent injury. See id. (visibly angry defendant's act of turning toward the alleged victim was not sufficient for "him to apprehend immediately receiving a violent injury, as OCGA § 16-5-20 (a) (2) requires"). We must therefore reverse Green's conviction for simple assault.

4. Green contends that the trial court erred in allowing the admission of "intrinsic evidence" of his encounters with the female CVS employees on the same day as the charged offenses.

The trial court conducted a pretrial hearing on the admissibility of this evidence and, over Green's objection, subsequently issued an order finding the evidence admissible as intrinsic evidence because it was "necessary to complete the story of the crimes charge in the indictment."[7] The trial court also concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

"It is within the trial court's sound discretion to determine whether to admit such evidence, so we review a trial court's ruling admitting evidence as intrinsic for an abuse of that discretion." (Citations and punctuation omitted.) *Harris v. State*, 310 Ga. 372, 377 (2) (b) (850 SE2d 77) (2020).

Evidence can be admitted as intrinsic evidence "when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged

_____

[7] The trial court also concluded that the evidence was admissible under OCGA § 24-4-404 (b), but at trial, the State stated that it was simply offering the evidence as intrinsic evidence and withdrew its request for a jury instruction on other acts evidence.

offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." (Citations and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). Based on these factors, "[e]vidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted as intrinsic evidence if (it is) linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." (Citation and punctuation omitted.) *Harris*, 310 Ga. at 378 (2) (b). And "intrinsic evidence remains admissible 'even if it incidentally places the defendant's character at issue.'" *Williams*, 302 Ga. at 486 (IV) (d).

We conclude that under the circumstances of this case, the trial court acted within its discretion in finding that evidence of the CVS employee interactions, which took place on the same day, and in one instance, shortly before the incident with the victim, was intrinsic to the charged offenses. "The traditional concept of res gestae provided that all the acts and circumstances surrounding the charged offense were admissible even if they reflected upon the defendant's character." (Citation and

13

punctuation omitted.) *McGlynn v. State*, 342 Ga. App. 170, 177 (3) (803 SE2d 97) (2017). The essence of this rule of admissibility "has been carried forward to the new rules of evidence under the concept of 'intrinsic' evidence, as opposed to 'extrinsic' evidence, i.e., evidence of 'other crimes, wrongs, or acts,' which is subject to the admissibility requirements of OCGA § 24-4-404 (b)." (Citation and punctuation omitted.) Id.; Paul S. Milich, Ga. Rules of Evidence, § 11:3.

Here, the CVS employee evidence was reasonably necessary to complete the story of the crime by providing further context for the attempted kidnapping charge. See *Harris*, 310 Ga. at 379 (2) (b) ("[W]hen we consider what evidence is necessary for the State to complete the story of the crime, 'necessary' is not used in a strictly literal sense, but rather, refers to what evidence is reasonably necessary for the State to complete the story of the crime."). Given the close temporal connection between Green's attempts to coax the female CVS employees to his car and his interaction with the victim, the trial court did not abuse its discretion in determining that the evidence was intrinsic to the charged crime. See *McGlynn*, 342 Ga. App. at 177 (3); see also *Harris*, 310 Ga. at 381 (2) (b) (evidence not required to pertain directly to the victims of the charged offenses for that evidence to be admitted as intrinsic evidence).

14

To be admissible, "[i]ntrinsic evidence must [also] satisfy Rule 403." *Middlebrooks v. State*, 310 Ga. 748, 751 (2) (b) (854 SE2d 503) (2021). "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" OCGA § 24-4-403. "The prejudicial effect of evidence is unfair if the evidence has the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged, or an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (Citation and punctuation omitted.) *Jackson v. State*, 317 Ga. 95, 102 (2) (a) (891 SE2d 866) (2023).

Here, there was nothing inherent in the CVS employee evidence that would create a risk that Green would be convicted of the only remaining charge, attempted kidnapping, on a ground different from proof specific to the offense charged, or that the evidence would render the jury incapable of weighing the evidence in an unbiased manner. Thus, although the CVS employee evidence might have cast Green in an unflattering light, it did not do so unfairly. As a result, the trial court did not abuse its discretion in concluding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. See *Wilson v. State*, 315 Ga. 728, 740 (8)

(a) (883 SE2d 802) (2023); see also *Johnson v. State*, 312 Ga. 481, 491 (4) (863 SE2d 137) (2021) ("[T]he exclusion of relevant evidence under Rule 403 is an extraordinary remedy that trial courts should grant only sparingly.") (citation and punctuation omitted).

*Judgment affirmed in part and reversed in part. Pipkin, J., concurs. Dillard, P. J., concurs in Divisions 1, 3, and 4, and in judgment only in Division 2.*